SOUTHERN IOWA ELECTRIC COMPANY *v.* CITY OF CHARITON, IOWA, ET AL.

IOWA ELECTRIC COMPANY *v.* CITY OF FAIRFIELD, IOWA, ET AL.

MUSCATINE LIGHTING COMPANY *v.* CITY OF MUSCATINE, IOWA, ET AL.

APPEALS FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF IOWA.

Nos. 180, 189, 190. Argued January 26, 28, 1921.—Decided April 11, 1921.

I. In the absence of a contract obligation, the grantee of a franchise to supply the public with electricity or gas cannot constitutionally be required by the State or its agencies to observe rates which, in effect, are confiscatory of its property. P. 541.

2. The acceptance from a municipality of a franchise to supply the public with gas or electricity for a term of years at specified maximum rates does not bind the grantee with a contractual obligation to charge no more if the rates become in effect confiscatory, where the law of the State (Iowa Code of 1897, §§ 720, 725) reposes in the municipality the continuing power to regulate such rates and, that the public may be protected from improvident bargains, forbids any abridgment of the power by ordinance, resolution or contract. P. 542.

256 Fed. Rep. 929, reversed.

THESE were suits brought by the appellants to restrain the appellees from enforcing the maximum rates for electricity and gas, specified in the ordinances granting the appellants' franchises, upon the ground that the rates had become unremunerative and confiscatory. The court below dismissed the bills. The facts are given in the opinion.

*Mr. Emmet Tinley*, with whom *Mr. W. E. Mitchell, Mr. J. C. Pryor, Jr., Mr. D. L. Ross* and *Mr. Edwin D. Mitchell* were on the brief, for appellant in No. 180.

*Mr. J. W. Kridelbaugh*, with whom *Mr. H. W. Byers* was on the brief, for appellees in No. 180.

*Mr. John A. Reed*, with whom *Mr. William Chamberlain* and *Mr. Ralph Maclean* were on the briefs, for appellant in No. 189.

*Mr. Ralph H. Munro*, with whom *Mr. X. C. Nady* was on the brief, for appellees in No. 189.

*Mr. William Chamberlain*, with whom *Mr. J. R. Lane, Mr. E. M. Warner, Mr. C. M. Waterman* and *Mr. Don Barnes* were on the brief, for appellant in No. 190.

No appearance for appellees in No. 190.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

At the time these suits were begun the appellants were engaged in supplying electricity or gas to the municipal corporations who are the appellees. This service was being rendered by virtue of ordinances conferring franchises to use the city streets during 25 years in two of the cases and 20 years in the other. The ordinances contained a schedule of maximum rates. After they were in effect a few years the three suits which are before us were begun against the cities with the object of preventing the en-

forcement of the maximum rates specified in the ordi-
nances, on the ground that such rates were so unreasonably
low that their continued enforcement would deprive the
corporations of remuneration for the services by them
being performed and in fact, if enforced, would result in
the confiscation of their property in violation of the due
process clause of the Fourteenth Amendment to the Con-
stitution of the United States. In the three cases the
court granted a temporary injunction restraining the
enforcement of the maximum rates and allowed an order
permitting, pending the suits, a higher charge.

The cases were submitted upon the pleadings and
without the taking of testimony upon issues which pre-
sented the contention, that the ordinances were contracts
and therefore the maximum rates which they fixed were
susceptible of continued enforcement against the corpora-
tions, although their operation would be confiscatory.
In one opinion, applicable to the three cases, the court
stated its reasons for maintaining this view, but directed
attention to the fact that no proof had been offered con-
cerning the confiscatory character of the rates, and point-
ing out that, as such subject might become important on
appeal, it would be necessary to restore the cases to the
docket for proof in that regard unless the situation was
remedied by agreement between the parties. There-
upon the pleadings were amended so as to directly present,
separately from the other issues in the case, the right of
the cities to enforce the ordinance rates in consequence
of the contracts, without reference to whether such rates
were in and of themselves confiscatory. Upon its opinion
as to the existence of contracts and the power to make
them as previously stated, the court entered decrees en-
forcing the ordinance rates which are now before us for
review because of the constitutional question involved.

Two propositions are indisputable: (a) That although
the governmental agencies having authority to deal with

the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations, *Reagan* v. *Farmers' Loan & Trust Co.*, 154 U. S. 362; *Smyth* v. *Ames*, 169 U. S. 466; *San Diego Land & Town Co.* v. *Jasper*, 189 U. S. 439, 442; *Knoxville* v. *Knoxville Water Co.*, 212 U. S. 1, 17; *Willcox* v. *Consolidated Gas Co.*, 212 U. S. 19, 41; *Minnesota Rate Cases*, 230 U. S. 352, 434; *Cedar Rapids Gas Light Co.* v. *Cedar Rapids*, 223 U. S. 655; *Des Moines Gas Co.* v. *Des Moines*, 238 U. S. 153; *Denver* v. *Denver Union Water Co.*, 246 U. S. 178, 194; and (b) that where, however, the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial. *Freeport Water Co.* v. *Freeport*, 180 U. S. 587, 593; *Detroit* v. *Detroit Citizens' Street Ry. Co.*, 184 U. S. 368; *Knoxville Water Co.* v. *Knoxville*, 189 U. S. 434, 437; *Cleveland* v. *Cleveland City Ry. Co.*, 194 U. S. 517; *Home Telephone Co.* v. *Los Angeles*, 211 U. S. 265, 273; *Minneapolis* v. *Minneapolis Street Ry. Co.*, 215 U. S. 417; *Columbus Railway, Power & Light Co.* v. *Columbus*, 249 U. S. 399.

It follows that as the rates here involved are conceded to be confiscatory they cannot be enforced unless they are secured by a contract obligation. The existence of a binding contract as to the rates upon which the lower court based its conclusion is, therefore, the single issue upon which the controversy depends. Its solution turns, first, upon the question of the power of the parties to contract on the subject, and second, if they had such power, whether they exercised it.

As to the first, assuming, for the sake of the argument only, that the public service corporations had the contractual power, the issue is, Had the municipal corporations under the law of Iowa such authority? Its possession must have been conferred, if at all, by § 725 of the Iowa Code of 1897, which deals with that subject. That statute came before the Supreme Court of Iowa for consideration in the very recent case of *Town of Woodward* v. *Iowa Railway & Light Co.*, 178 N. W. Rep. 549. That was a suit by the Town of Woodward to compel the Light Company to continue to furnish electric lighting at the rates fixed by the ordinance conferring upon the company its franchise to maintain and operate its plant in the town. The company resisted on the ground that the rates had become confiscatory and were not enforceable. Testimony offered by the company to establish the confiscatory character of the rates was objected to by the town, which asserted that the acceptance by the company of the ordinance bound it by contract to furnish the service at the rates therein prescribed whether or not they were confiscatory, and that the evidence offered was therefore immaterial. The evidence was received, subject to the objection, and the court, finding the rates to be confiscatory, sustained the company's contention and dismissed the bill. Upon appeal by the town, the Supreme Court, affirming the action of the trial court, said:

"The defendant's franchise in the town of Woodward was granted in June, 1912, by ordinance duly enacted by the city council and duly approved by vote of the electors, as required by section 720 of the Code. Section 6 of the ordinance which granted the franchise specified the rates to be charged by the defendant to consumers. The term of the franchise was 25 years. The essence of the plaintiff's contention is that the enactment of this ordinance (including the franchise, and the rates and the approval

of the same by the electors), and the practical acceptance
of the same by the utility corporation, constituted a con-
tract binding as such both upon the town and upon the
utility corporation. The defendant resists this contention
and likewise denies that there is any power conferred by
statute upon the city council to enter into contract on
the subject of rates. The issue at this point is the con-
trolling one in the case. The question thus at issue is
answered by section 725 of the Code of 1897, which pro-
vides as follows:

"'Sec. 725. *Regulation of Rates and Service.*—They
shall have power to require every individual or private
corporation operating such works or plant, subject to
reasonable rules and regulations, to furnish any person
applying therefor, along the line of its pipes, mains, wires,
or other conduits, with gas, water, light or power, and to
supply said city or town with water for fire protection,
and with gas, water, light or power for other necessary
public purposes,[1] [and to regulate and fix the rent or
rates for water, gas and electric light or power] . . .
and these powers shall not be abridged by ordinance, re-
solution or contract.'

"It will be noted from the foregoing that the legislative
power to fix rates is conferred by this section upon the
city council. The legislative power thus conferred is a
continuing one, and may not be abridged or bartered
away by contract or otherwise. . . . There was a
time in the history of our legislation when the right of
contract as to rates was conferred by statute upon the
city council. . . . By the revision and codification
of 1897, the right of contract as to rates for utilities of
this character was entirely eliminated, and the legislative

---

[1] The words in brackets are found in the section, but are not em-
braced in the provisions quoted by the court, although as shown by the
language of the court as to the rate provision they were clearly taken
into view and applied in construing the statute.

power to regulate rates was conferred upon the city council in all cases. The reason for the change of method is obvious enough. Under the contract method, the rights of the public were often bartered away, either ignorantly or corruptly, and utility corporations became empowered through the contractual obligations to enforce extortionate rates. The net result of the progressive legislation is found in our present section 725, whereby it is forbidden to any existing city council to bind the city to any rate for any future time. The power of regulating the rate is always in the present city council. It must be said, therefore, that the rates fixed by section 6 of the ordinance, hereinbefore referred to, were not fixed by contract."

Indeed, the doctrine thus expounded was but a reiteration of the rule of the Iowa law laid down in previous cases. *City of Tipton* v. *Tipton Light & Heating Co.*, 176 Iowa, 224; *Iowa Railway & Light Co.* v. *Jones Auto Co.*, 182 Iowa, 982; *Town of Williams* v. *Iowa Falls Electric Co.*, 185 Iowa, 493. And again, more recently, in *Ottumwa Railway & Light Co.* v. *City of Ottumwa*, 178 N. W. Rep. 905, the court, referring to the *Town of Woodward Case* and to the doctrine therein announced based upon the significance of § 725 of the Code of 1897, thus restated its former conclusion on that subject:

"That statute in positive terms forbids any abridgment of the right to regulate and fix charges of service corporations named in the statute, either by ordinance, resolution, or contract. No one would now contend, in the teeth of the statute prohibition, that there can be a valid contract fixing permanent rates. As to corporations named in that statute we have held repeatedly that there can be no contracting that rates fixed for service shall not be changed. See *Tipton* v. *Light Co.*, 176 Iowa, 224, 157 N. W. 844; *Selkirk* v. *Gas Co.*, 176 N. W. 301. And see *San Antonio Co.* v. *City* (D. C.), 257 Fed. 467. To like

effect is *Iowa Co.* v. *Jones*, 182 Iowa, 982, 164 N. W. 780. And in the last case it is held that the fixing of maximum rates in a franchise ordinance is therefore not a contract that such rates may not be changed before the time stated in such ordinance has lapsed, and that approval by the electors of rates in the franchise is merely an approval of the rates fixed by the franchise, as rates temporarily settled, with the understanding that the same might be changed either upward or downward."

The total want of power of the municipalities here in question to contract for rates, which is thus established, and the state public policy upon which the prohibition against the existence of such authority rests, absolutely exclude the existence of the right to enforce, as the result of the obligation of a contract, the concededly confiscatory rates which are involved, and therefore conclusively demonstrate the error committed below in enforcing such rates upon the theory of the existence of contract. And, indeed, the necessity for this conclusion becomes doubly manifest when it is borne in mind that the right here asserted to contract in derogation of the state law and of the rule of public policy announced by the court of last resort of the State is urged by municipal corporations whose every power depends upon the state law. *Covington* v. *Kentucky*, 173 U. S. 231, 241; *Worcester* v. *Worcester Consolidated Street Ry. Co.*, 196 U. S. 539, 548; *Braxton County Court* v. *West Virginia*, 208 U. S. 192; *Englewood* v. *Denver & South Platte Ry. Co.*, 248 U. S. 294, 296; *Pawhuska* v. *Pawhuska Oil & Gas Co.*, 250 U. S. 394, 399.

*Decrees reversed and causes remanded for further proceedings in conformity with this opinion.*