SOUTHERN UTILITIES COMPANY, A CORPORATION, *Appellant*, v. CITY OF PALATKA, A MUNICIPAL CORPORATION, *Appellee*.

Opinion Filed December 21, 1923.

Petition for Rehearing Denied January 28, 1924.

1. Under the provisions of Section 8, Article VIII, of the State Constitution, that "The legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time," the legislature may by law authorize a municipality to make a contract for rates to be charged for public service rendered to the municipality or its inhabitants, and such a contract when duly authorized and entered into will be binding on the parties thereto, but the contract will be subject to the power of the legislature under Section 30, Article XVI of the Constitution, to pass laws providing for regulating rates for "services of a public nature."

2. The Constitution of Florida contains no express provision forbidding the police power of the State to be abridged by irrevocable contract or otherwise.

3. The City of Palatka has not been authorized by statute to regulate rates for electricity furnished by a public utility company to the city and its inhabitants.

4. Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to defeat the legitimate government authority.

5. There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts, or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community.

6. The duty of an owner of private property used for the public service to charge only a reasonable rate and thus respect the authority of government to regulate in the public interest, and of government to regulate by fixing such a reasonable rate as will safeguard the rights of private ownership, are interdependent and reciprocal. Where, however, the right to contract exists and the parties, the public on the one hand and the private on the other, do so contract, the law of the contract governs both the duty of the private owner and the governmental power to regulate.

7. Municipal contracts for the rendering of public service will be sustained where the power is given to make the contract, and the terms of it taken with the law controlling them are not clearly violative of some provision or principle of law.

8. Although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporation.

9. Where public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial.

10. While Section 8, Article VIII of the Constitution expressly authorizes the Legislature to prescribe the jurisdiction and powers of municipalities, yet any authority given a city by the Legislature to make contracts for public service rates is subject to the organic provision that "the Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature."

11. There is in this State no provision of controlling law, expressly forbidding irrevocable contracts or other abridgments of the police power, as is prescribed in the States of Iowa, Texas, Louisiana and other States.

12. Section 30, Article XVI of the State Constitution, does not forbid the Legislature to authorize the cities of the State to enter into term contracts for service rates with public utility corporations; but the quoted organic provision merely makes such contracts that are otherwise valid and binding, subject to the "full power" of the Legislature to provide for fixing just and reasonable rates in the premises.

13. Powers that are indispensable to the declared objects and purposes of a municipality may be inferred or implied from powers expressly given that are fairly subject to such construction. The difficulty of making specific enumeration of all such powers as the Legislature may intend to delegate to municipal corporations renders it necessary to confer some power in general terms. The general powers given are intended to confer other powers than those specifically enumerated.

14. The *general* charter powers of a municipality usually relate to governmental functions as distinguished from business powers; and such general powers are designed to confer authority that is not expressly or specifically conferred and is essential or expedient to accomplish the purposes for which the municipality is organized.

15. Where the exercise of particular *governmental* powers may be fairly included in and authorized by general powers conferred upon municipalities, the rule *expressio unius est exclusio alterius* is not generally applied to specific powers conferred to exclude powers that serve the purposes for which municipalities are organized, where such powers are not inconsistent with other powers conferred or with limitations imposed by the charter or by statute upon the municipal powers.

16. When a municipality undertakes to exercise powers of a business nature as distinguished from governmental functions, the authority for such exercise should clearly appear by express provisions or by reasonably certain implication from other powers conferred, and should be in entire consonance with the purposes for which the municipality was created. In determining whether a particular *business* power may be implied from express powers conferred, the rule *expressio unius est exclusio alterius*, as other rules of interpretation, may in proper cases be applied to effectuate the legislative intent in conferring municipal powers.

17. Ordinance contracts for supplying the city and its inhabitants with lights, is a usual and necessary function of a municipality, and authority to make such contracts may be included in powers given in general terms, where such power is not in conflict with specific powers conferred.

18. The City of Palatka has statutory powers to pass ordinances that may be necessary and expedient for the good government of the city * to regulate, alter and improve and extend the streets of the city * to do and perform all such other act or acts as shall seem necessary and best adapted to the general interests of the city * and to provide for the

lighting of streets of the city. These general statutory powers are sufficient to confer upon the city authority to make a franchise contract with provisions as to rates to be charged individuals for electric lights; such contract is consistent with the express power "to provide for the lighting of streets of the city," and is not repugnant to or inconsistent with any specific or general statutory power of the city.

19. There being a contract fixing rates for electricity to be furnished by the utility company to the inhabitants of the City of Palatka, and the Legislature not having authorized the city or any other governing body to regulate such rates, the question as to whether the contract rates are remunerative, is immaterial, and the contract controls until the Legislature does act in the premises.

This case was decided by Division B.

An Appeal from the Circuit Court for Putnam County; Daniel A. Simmons, Judge.

Affirmed.

*John T. G. Crawford* and *W. B. Crawford,* for Appellant;

*Thos. B. Dowda, W. P. Dineen* and *J. J. Canon,* for Appellee.

WHITFIELD, P. J.—The bill of complaint herein brought by the city in effect alleges that in 1914 the city by ordinance made a contract by which the city granted to the predecessors of the utility company, "and its successors and assigns, the right and privilege to construct, own, operate and maintain in the City of Palatka, Florida, a plant or plants for the manufacture, sale and distribution of electricity, gas and other illuminants or products for light,

power and fuel; and to lay mains, pipes and fixtures under the streets, lanes, alleys, sidewalks and bridges of said city for the distribution of gas, and to erect poles, lamp posts, wires and appliances for the transmission of electricity and power, under, through, over and across the said streets, lanes, alleys, sidewalks and bridges of said city for a period of thirty years from said date; that as a consideration for the granting of such right and privilege by said city of Palatka to said Palatka Gas Light & Fuel Company and its successors and assigns, said Palatka Gas Light & Fuel Company covenanted and agreed with said city of Palatka as an incident to said grant referred to in paragraph three thereof, that the rates to be charged in the City of Palatka for commercial electric lighting should not be more than ten cents per kilowatt, meter measurement for the first ten years, and not more than nine cents per kilowatt thereafter, meters to be furnished and kept in repair by the grantees at its own expense, and the minimum charge should not be more than one dollar and fifty cents per month; that said Palatka Gas Light & Fuel Company accepted said ordinance or grant, and all the covenants and conditions therein contained, in its entirety, by instrument in writing, and by constructing, owning, operating and maintaining in said City of Palatka a plant or plants for the manufacture, sale and distribution of electricity, gas and other illuminants or product for light, power and fuel, and erecting poles, lamp posts, wires and appliances for the transmission of electricity and power under, through, over and across the said streets, lanes, alleys, sidewalks and bridges of said City of Palatka; that on the 1st day of January, A. D. 1917, the Palatka Gas Light & Fuel Company, a corporation as aforesaid, then enjoying the rights and privileges granted by said City of Palatka and accepted by it, and operating and carrying on the business contemplated by said grant, assigned

and transferred the rights and privileges so granted to it by said City of Palatka as aforesaid, to the Palatka Public Service Company, a corporation under the laws of the State of Florida, with principal place of business in the City of Palatka, Putnam County, Florida; that on the 1st day of November, A. D. 1917, the Palatka Public Service Company, a corporation as aforesaid, then enjoying the rights and privileges granted by said City of Palatka to and accepted by said Palatka Gas Light & Fuel Company, and assigned and transferred to it by said Palatka Gas Light & Fuel Company, and operating and carrying on the business contemplated by said grant and assignment thereof, transferred and assigned said rights and privileges granted and assigned to it as aforesaid to the Southern Utilities Company, a corporation as aforesaid, defendant; that said defendant, under said assignment from Palatka Public Service Company, a corporation as aforesaid, to it, accepted said ordinance or grant, and all the conditions, covenants and agreements therein contained, in its entirety, and under said ordinance or grant as assigned to it, has constructed, owned, operated and maintained in the City of Palatka, Florida, a plant for the manufacture, sale and distribution of electricity, and has erected poles, lamp posts, wires and other appliances for the transmission of electricity and power under, through, over and across the streets, lanes, alleys, sidewalks and bridges of said city, and has manufactured, sold and distributed electricity in said City of Palatka from the 1st day of November, A. D. 1917, until the present time, to the City of Palatka for lighting the strets, public places and public buildings of said city and furnished electricity for light and power to the inhabitants of said city who desired to procure the same, and who paid therefor at the rate charged by said defendant, and enjoyed and exercised all

the rights and privileges granted by and incident to said ordinance, and continues to enjoy and exercise all said rights and privileges at this time; that notwithstanding the conditions and covenants contained in said ordinance, and the duty of said defendant to furnish the City of Palatka and the inhabitants thereof electricity for lighting and power under the terms of said ordinance, the defendant has refused and neglected and still refuses and neglects to comply with the conditions and covenants in said ordinance contained and has charged and collected each month from the inhabitants of said City of Palatka and patrons of said defendant in said City of Palatka, and continues to charge and collect each month from the inhabitants of said City of Palatka and patrons of said defendant in said City of Palatka, for commercial electric lighting, thirteen cents per kilowatt, meter measurement, and a minimum charge of one dollar and fifty cents per month; and complainant says that it has protested to said defendant against such charge in excess of the rate prescribed in said ordinance, as incident to the grant of the right and privilege therein and thereby granted, and repeatedly notified and requested said defendant to comply with the covenants and conditions of said ordinance, and defendant has refused, and still refuses and neglects so to do, persisting in violating the same, and defying the complainant in its efforts to obtain a compliance therewith.''

It is prayed that the ''Southern Utilities Company, a corporation, defendant, may be restrained and enjoined by decree of this court from charging and collecting from the inhabitants of said City of Palatka and patrons of said defendant in the City of Palatka, said rate of thirteen cents per kilowatt, meter measurement, for commercial electric lighting, or any rate for such commercial electric lighting in the City of Palatka in excess of the rate set out as inci-

dent to the grant of the rights and privileges contained in said ordinance, to-wit: the rate of ten cents per kilowatt, measurement, that a temporary injunction or restraining order be issued, without notice, out of this Honorable Court, of like character, directed to the defendant, and upon final hearing said temporary injunction be made permanent, and for such other and further relief in the premises as equity may require and to this court may seem meet and proper.''

A temporary restraining order was granted. Motions to dissolve the restraining order or temporary injunction were denied, appropriate bonds being required.

A demurrer to the bill of complaint was overruled.

The following plea was overruled: ''That by the certain franchise ordinance, a true copy of which is attached to and made a part of the said bill of complaint herein, the complainant, City of Palatka, undertook to fix a minimum rate for commercial electric lighting to be furnished by the defendant to the inhabitants of the said City of Palatka under said franchise ordinance; that by the terms of said franchise ordinance the said mixamum rate for said commercial electric lighting was to extend over a period of thirty years from the date thereof, to-wit, August 21, 1914; that although the said franchise rate of ten cents per kilowatt was reasonable at the date of said franchise ordinance and so remained for a long time thereafter, the great change in economic conditions brought about by the world war have rendered it impossible for this defendant to manufacture and distribute electric current for commercial electric lighting at said rate of ten cents per kilowatt, meter measurement, as prescribed in said franchise ordinance and leave to this defendant a reasonable return on its property devoted to said purposes; that this defendant is operating its said property as economically as possible; that said rate

of ten cents per kilomatt is unreasonably low; that if com-
pelled to continue to manufacture and distribute electric
current for commercial electric lighting at said rate fixed
by said franchise ordinance its said property will, in effect,
be confiscated and it will be deprived of its said property
without due process of law and it will be denied the equal
protection of the laws as guaranteed by the constitu-
tion of the United States; that said franchise ordi-
nance, insofar as it purports to prescribe said rate of ten
cents per kilowatt, meter measurement, is in conflict with
Section 30 of Article XVI of the constitution of the State of
Florida and is void and of no effect; that in order to yield
to this defendant a reasonable return upon its property de-
voted to the manufacture and distribution of electric cur-
rent as aforesaid it is necessary for this defendant to charge
and collect at a rate of not less than thirteen cents per kilo-
watt, meter measurement, for said commercial electric
lighting; that said sum of thirteen cents per kilowatt is a
reasonable rate.''

The final decree, ''ordered, adjudged and decreed:

''1.   That the equities in this cause are with the com-
plainant.

''2.   That the restraining order heretofore granted here-
in on July 28, 1922, and the temporary injunction hereto-
fore granted herein on August 16, 1922, be and each of them
are hereby confirmed and approved;

· ''3.   That in accordance with the prayer of the bill of
complaint, said temporary restraining order and said tem-
porary injunction be and they are hereby made permanent
and said defendant Southern Utilities Company be and it is
permanently enjoined and restrained from collecting from
the inhabitants of the City of Palatka and the patrons of
said Southern Utilities Company in the City of Palatka
more than ten cents per kilowatt hour, meter measurement,

for electricity furnished by said defendant for commercial electric lighting, including the lighting of homes.''

An appeal from the final decree was taken by the defendant company.

In brief, the contention of the utility company, appellant, is that under Section 30, Article XVI of the Florida Constitution, the city could not enter into a binding contract fixing rates for electricity furnished the city or its inhabitants, and cites as authorities City of Tampa v. Tampa Water Works Co. v. Tampa, 199 U. S. 241, 26 Sup. Ct. Rep. 23; Muscatine Lighting Co. v. Muscatine, 255 U. S. 539, 65 L. Ed. 764, 41 Sup. Ct. Rep. 400; San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 65 L. Ed. 777, 41 Sup. Ct. Rep. 428. The appellant also contends that the municipality had no legislative authority to enter into the contract in controversy fixing rates for individual consumers of electricity.

Section 8, Article VIII of the State Constitution provides that: ''The legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time.''

Under this organic provision the legislature may by law authorize a municipality to make a contract for rates to be charged by public service corporations for service rendered to the municipality or its inhabitants, and such a contract when duly authorized and entered into will be binding on the parties thereto, but the contract will be subject to the power of the legislature under Section 30, Article XVI, of the Constitution to pass laws providing for regulating rates for ''services of a public nature.'' City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; Tampa Water Works Co. v. Tampa, 199 U. S. 241, 26 Sup. Ct. Rep. 23; State ex rel. Triay v. Burr, 79 Fla.

290, 84 South. Rep. 61; State *ex rel.* Ellis v. Tampa Water Works Co., 57 Fla. 533, 48 South. Rep. 639; Town of Brooksville v. Florida Tel. Co., 81 Fla. 436, 88 South. Rep. 307; State *ex rel.* Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705.

Section 30, Article XVI, of the Florida Constitution, is as follows: ''The legislature is invested with full power to pass laws for the correction of abuses, and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures.'' In construing this organic provision, this court has said: ''The power mentioned in this section is full power; a continuing, ever present power. Being irrevocably vested by this section, the legislature cannot divest itself of it. Neither can it bind itself by contract, nor authorize a municipality—one of its creatures—to bind it by contract, so as to preclude the exercise of this power whenever in its judgment the public exigencies demand its exercise. Full power cannot exist, if by contract that power can be curtailed or impaired. Without this section this power to regulate rates would exist under the general grant of legislative power in Section 1, Article III, but such power could be surrendered by a contract made by the State or by a municipality by its authority. With this section in force the power to surrender by contract the right to regulate rates is taken away, for the authority to surrender can not co-exist with the ever present continuing power to regulate, which is declared by this section to exist in the legislature. The section in question does not operate to prevent the legislature from making contracts itself, nor from authorizing municipalities to make them and in and by such contracts stip-

ulating for certain rates which will be valid and binding obligations so long as the legislature does not exercise or authorize municipalities to exercise the power to prevent excessive charges which is declared by the section to be vested in the legislature. But every charter granted and every contract made by the legislature, or by a municipality under its authority, are accepted and made subject to and in contemplation of the possibility of the subsequent exercise of the power to prevent excessive charges which by this section is unalterably and irrevocably vested in the legislature. The section not only becomes a part of every such contract, as much so as if written therein, but by implication it denies the authority of the legislature to bind itself either by a contract of its own making, or one made by a municipality under its authorization, not to exercise the power thereby recognized whenever in its wisdom it should think necessary so to do.'' City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631.

There is nothing in the laws of the State that confers upon the city a power to regulate rates to be paid for electricity furnished in the city. Section 1932, Revised General Statutes, 1920, applies to service rendered by plants operated by the city. See Chapter 4600, Acts of 1897.

''Contracts must be understood as made in reference to the possible exercise of the rightfud authority of the government, and no obligation of a contract can extend to defeat the legitimate government authority.'' Knox v. Lee, 12 Wall. (U. S.) 457, text 550, 551; Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, text 376, 39 Sup. Ct. Rep. 117.

''There is no absolute freedom to do as one wills or to contract as one chooses. The guaranty of liberty does not withdraw from legislative supervision that wide department of activity which consists of the making of contracts,

or deny to government the power to provide restrictive safeguards. Liberty implies the absence of arbitrary restraint, not immunity from reasonable regulations and prohibitions imposed in the interests of the community." Chicago, B. & Q. R. Co., v. McGuire, 219 U. S. 549, text 567, 31 Sup. Ct. Rep. 259.

The duty of an owner of private property used for the public service to charge only a reasonable rate and thus respect the authority of government to regulate in the public interest, and of government to regulate by fixing such a reasonable rate as will safeguard the rights of private ownership, are interdependent and reciprocal. Where, however, the right to contract exists and the parties, the public on the one hand and the private on the other, do so contract, the law of the contract governs both the duty of the private owner and the governmental power to regulate. San Antonio v. San Antonio Public Service Co., 255 U. S. 547, text 556, 65 L. Ed. 777, 41 Sup. Ct. Rep. 428.

Municipal contracts for the rendering of public service will be sustained where the power is given to make the contract, and the terms of it taken with the law controlling them are not clearly violative of some provision or principle of law. State ex rel. Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358.

In the Tampa Water Works cases the distinct holding is not that because of Section 30, Article XVI, of the State Constitution the city could not, even with legislative authority, make a valid contract fixing service rates with a public utility company operating within the city; but that such contracts when duly made are subject to laws passed by the legislature under Section 30, Article XVI, of the Constitution. See State ex rel. Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61; State ex rel. Swearingen v. Railroad Commission of Florida, 79 Fla. 526, 84 South. Rep. 444;

State *ex rel.* Ellis v. Tampa Water Works Co., 57 Fla. 533, 48 South. Rep. 639; State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358; State *ex rel.* Attorney General v. Atlantic Coast Line Ry., 52 Fla. 646, 41 South. Rep. 705; Town of Brooksville v. Florida Telephone Co., 81 Fla. 436, 88 South. Rep. 307; 20 C. J. 330; Union Dry Goods Co. v. Georgia Public Service Corporation, 248 U. S. 372, 39 Sup. Ct. Rep. 117; Union Dry Goods Co. v. Georgia Public Service Corporation, 142 Ga. 841, 83 S. E. Rep. 946; Penney & Boyle Co. v. Los Angeles Gas & Electric Corp., 168 Cal. 12, 141 Pac. Rep. 620, L. R. A. 1915C 282, Ann. Cas. 1915D 471; Village of Kilbourn City v. Southern Wisconsin Power Co., 149 Wis. 168, 135 N. W. Rep. 499; City of Scranton v. Public Service Commission, 268 Pa. 192, 110 Atl. Rep. 775; Woodburn v. Public Service Commission, 82 Ore. 114, 161 Pac. Rep. 391; State *ex rel.* City of Billings v. Billings Gas Co., 55 Mont. 102, 173 Pac. Rep. 799; People *ex rel.* Village of South Glens Falls v. Public Service Commission, 225 N. Y. 216, 121 N. E. Rep. 777; City of Sapulpa v. Oklahoma Natural Gas Co., 79 Okla. 196, 192 Pac. Rep. 224; Knoxville Gas Co. v. City of Knoxville, 261 Fed. Rep. 283; Salt Lake City v. Utah Light & Traction Co., 52 Utah 210, 173 Pac. Rep. 556, P. U. R. 1918F 377, 3 A. L. R. 715, and Notes; Woodburn v. Public Service Commission, 82 Ore. 114, 161 Pac. Rep. 391, Ann. Cas. 1917E 996; Puget Sound Traction, Light & Power Co. v. Reynolds, 244 U. S. 574, 37 Sup. Ct. Rep. 705.

In Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, 65 L. Ed. 764, 41 Sup. Ct. Rep. 400, the laws of the State conferred upon *the city* "the continuing power to regulate rates and forbade any abridgment of the power by ordinance, resolution or contract." It was held that under these State laws the city was not authorized to make a contract fixing rates for a term of years, therefore the con-

tract, lacking in mutuality, was void, and reasonable rates could be demanded. In City of New Orleans v. O'Keefe, 280 Fed Rep. 92, where the constitution of Louisiana provided that "the exercise of the police power of the State shall never be abridged," it was held the city could not make a binding contract for rates. State v. City of New Orleans 151 La. 24, 91 South. Rep. 533.

In San Antonio v. San Antonio Public Service Co., 255 U. S. 547, 65 L. Ed. 777, 41 Sup. Ct. Rep. 428, *the city* "was vested with the rate regulating power and forbidden to restrict it by contract." There being no valid contract, a reasonable rate was proper. See Houston v. Southwestern Bell Telephone Co., 259 U. S. 318, 66 L. Ed. 961, 42 Sup. Ct. Rep. 486. See also City and County of Denver v. Stenger, 277 Fed. Rep. 865; City of Lead v. Western Gas & Fuel Co., 44 S. Dak. 510, 184 N. W. Rep. 244; O'Keefe v. City of New Orleans, 273 Fed. Rep. 560; City of New Orleans v. O'Keefe, 280 Fed. Rep. 92; Opelika Sewer Co. v. City of Opelika, 280 Fed. Rep. 155.

In Southern Iowa Electric Co. v. Chariton, 255 U. S. 539, text 541-2, 41 Sup. Ct. Rep. 400, it is said: "Two propositions are indisputable: (a) That although the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations, Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362; Smyth v. Ames, 169 U. S. 466; San Diego Land & Town Co. v. Jasper, 189 U. S. 439, 442; Knoxville v. Knoxville Water Co., 212 U. S. 1, 17; Willcox v. Consolidated Gas Co., 212 U. S. 19, 41; Minnesota Rate Cases, 230 U. S. 352, 434; Cedar Rapids Gas Light Co. v. Cedar Rapids, 223 U. S. 655; Des Moines Gas Co. v. Des Moines, 238 U. S. 153; Den-

ver v. Denver Union Water Co., 246 U. S. 178, 194; and (b) that where, however, the public service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power ·by fixing by contract rates to govern during a particular time the enforcement of such rates is controlled by the obligation resulting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial. Freeport Water Co. v. Freeport, 180 U. S. 587, 593; Detroit v. Detroit Citizens' Street Ry. Co., 184 U. S. 368; Knoxville Water Co. v. Knoxville, 189 U. S. 434, 437; Cleveland v. Cleveland City Ry. Co., 194 U. S. 517; Home Telephone Co. v. Los Angeles, 211 U. S. 265, 273; Minneapolis v. Minneapolis Street Ry. Co., 215 U. S. 417; Columbus Railway, Power & Light Co. v. Columbus, 249 U. S. 399.''

While Section 8, Article VIII, of the Constitution expressly authorizes the Legislature to prescribe the jurisdiction and powers of municipalities, yet any authority given a city by the Legislature to make contracts for public service rates is subject to the organic provision that ''the Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature.'' Sec. 30, Art. XVI, Constitution.

There is in this State no provision· of controlling law, expressly forbidding irrevocable contracts or other abridgments of the police power as is prescribed in the States of Iowa, Texas, Louisiana and other states as shown by the authorities above cited (City and County of Denver v. Stenger, 277 Fed. Rep. 865, text 871). The above quoted Section 30 of Article XVI does not forbid the Legislature to authorize the cities of the State to enter into term con-

tracts for service rates with public utility corporations; but the quoted organic provision merely makes such contracts that are otherwise valid and binding, subject to the "full power" of the Legislature to provide for fixing just and reasonable rates in the premises. This is the decision in City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; Tampa Water Works Co. v. Tampa, 199 U. S. 241, 26 Sup. Ct. Rep. 23; State ex rel. Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61, and other similar cases above cited. Town of Brooksville v. Florida Tel. Co., 81 Fla. 436, 88 South. Rep. 307. In City of Wagner v. South Dakota Light & Power Co., — S. D. —, 193 N. W. Rep. 129, the city had authority to regulate rates, therefore it was the duty of the city to prescribe reasonable rates and it could not enforce confiscatory rates. See also City and County of Denver v. Stenger, 277 Fed. Rep. 865.

The appellant contends that as Section 30, Article XVI, of the Constitution, provides that "the Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged" in performing "services of a public nature," which organic provision makes all contracts for rendering public service subject to the power of the Legislature to regulate the rates to be charged for such service, therefore neither the legislature nor a municipality can have the power to make a binding contract for such public service rates. But the constitution does not expressly forbid irrevocable contracts or other abridgments of the police power, as in Louisiana and other states. If the Constitution of Florida did so provide, there might be a basis for argument that municipalities in this State cannot make binding rate contracts with public utility companies. The power to pass

laws to regulate rates is invested in the Legislature, which power may be exercised through a municipality; and conceding that the power to regulate rates excludes the power to contract for continuing rates, such power to regulate the rates here involved has not been given the city; and the power of a city to make binding contracts in the premises until the city has been authorized to regulate the rates has been held in City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631.

As under Section 8, Art. VIII, of the Constitution, the Legislature may prescribe the jurisdiction and powers of municipalities, and as the Constitution and statutes of the State do not make it unlawful for municipalities to enter into contracts for public service rates, it must be determined whether the Legislature had by charter authority or other statute, vested the City of Palatka with power to enter into the asserted contract here sought to be enforced. If no such authority has been given, the alleged contract is without force or efficacy.

Municipalities are established by law for purposes of government. Their functions are performed through appropriate officers and agents, and they can exercise only such powers as are legally conferred by express provisions of law, or such as are by fair implication and intendment properly incident to or included in the powers expressly conferred for the purpose of carrying out and accomplishing the object of the municipality. Powers that are indispensable to the declared objects and purposes of a municipality may be inferred or implied from powers expressly given that are fairly subject to such construction. The difficulty of making specific enumeration of all such powers as the Legislature may intend to delegate to municipal corporations renders it necessary to confer some power in general terms. The general powers given

are intended to confer other powers than those specifically enumerated.    General powers given to a municipality should be interpreted and construed with reference to the purposes of the corporation.

Where particular powers are expressly conferred and there is also a general grant of power, such general grant by intendment includes all powers that are fairly within the terms of the grant and are essential to the purposes of the municipality, and not in conflict with the particular powers expressly conferred.    The law does not expressly grant powers and impliedly grant others in conflict therewith.    If reasonable doubt exists as to a particular power of a municipality it should be resolved against the city; but where the particular power is clearly conferred or is fairly included in or inferable from other powers expressly conferred, and is consistent with the purposes of the municipality and the powers expressly conferred, the exercise of the power should be resolved in favor of the city so as to enable it to perform its proper functions of government.

Among the usual functions of a municipal government are those of granting privileges in the use of its streets for the purpose of rendering service of a public nature, such as furnishing the municipality and its inhabitants service necessary or useful for the common welfare of all. The furnishing of water for use and for fire protection is a service necessary or useful for the individual and collective well being of a city and its inhabitants. Authority to make provisions within lawful limitations for securing or furnishing to a city and its inhabitants an abundant supply of good water for all purposes, is a usual and necessary power of a municipality, and such power may be included in powers given in general terms, where there is nothing in the enumeration of particular powers con-

ferred to limit in this particular the operation of the general powers conferred. Porter v. Vinzant, 49 Fla. 213, 38 South. Rep. 607; Mernaugh v. City of Orlando, 41 Fla. 433, 27 South. Rep. 34.

Unless expressly or impliedly restrained by statute a municipal corporation has a discretion in the choice of means and methods for exercising the powers given to it for governmental or public purposes, and the usual limitations upon the actions of municipalities within their legal powers are good faith and reasonableness, not wisdom or perfection. Jacksonville Electric Co. v. City of Jacksonville, 36 Fla. 229, text 271, 18 South. Rep. 677.

Where action is taken by a municipality in the exercise of its powers the methods used will not be controlled by the courts where there is no abuse of power or discretion. All doubts as to the propriety of means used in the exercise of an undoubted municipal power will be resolved in favor of the municipality. State ex rel. Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358.

The *general* charter powers of a municipality usually relate to governmental functions as distinguished from business powers; and such general powers are designed to confer authority that is not expressly or specifically conferred and is essential or expedient to accomplish the purposes for which the municipality is organized. Where the exercise of particular governmental powers may be fairly included in and authorized by general powers conferred upon municipalities, the rule *expressio unius est exclusio alterius* is not generally applied to specific powers conferred to exclude powers that serve the purposes for which municipalities are organized, where such powers are not inconsistent with other powers conferred or with limitations imposed by the charter or by statute upon the municipal powers. When a municipality undertakes to

exercise powers of a business nature as distinguished from governmental functions, the authority for such exercise should clearly appear by express provisions or by reasonably certain implication from other powers conferred, and should be in entire consonance with the purposes for which the municipality was created. In determining whether a particular business power may be implied from express powers conferred, the rule *expressio unius est exclusio alterius* as other rules of interpretation, may in proper cases be applied to effectuate the legislative intent in conferring municipal powers.

It appears that the municipality had statutory authority to "pass ordinances that may be necessary and expedient for the good government of said town, and for the preservation of the public peace, health, and morals: *Provided, however,* They are not inconsistent with the Laws or Constitution of this State or the United States; they shall especially have power to regulate, alter, and improve and extend the streets, lanes and avenues of said town, or to lay out and establish and open new streets, and to cause obstructions and encroachments to be removed * * * and do and perform all such other act or acts as shall seem necessary and best adapted to the general interests of said town" (Sec. 11, Chap. 492, Acts 1852) "to provide for the lighting of streets of the city or town," (Sec. 1041, Gen. Stats. 1906, Sec. 1868, Rev. Gen. Stats. 1920), "to regulate, improve, alter, extend and open streets, lanes and avenues," (Sec. 1915, Gen. Stats. 1906, Sec. 1843, Rev. Gen. Stats. 1920).

Ordinance contracts for supplying the city and its inhabitants with lights, is a usual and necessary function of a municipality and authority to make such contracts may be included in powers given in general terms, where such power is not in conflict with specific powers conferred.

See State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358.

The above quoted general statutory powers of the city are sufficient to confer upon the city authority to make a franchise contract with provisions as to rates to be charged individuals for electric lights of the character of the one in controversy; such contract is consistent with the express power "to provide for the lighting of streets of the city," and is not repugnant to or inconsistent with any specific or general statutory power of the city. See City of Tampa v. Tampa Water Works Co., 45 Fla. 600, 34 South. Rep. 631; State *ex rel.* Ellis v. Tampa Water Works Co., 56 Fla. 858, 47 South. Rep. 358. The contract does not grant exclusive franchise privileges. Capital City Light & Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 South. Rep. 810; Capital City Light & Fuel Co. v. Tallahassee, 186 U. S. 401, 22 Sup. Ct. Rep. 866.

In Hyatt v. Williams, 148 Cal. 585, 84 Pac. Rep. 41, the specific charter powers were "to provide for and regulate lighting streets, avenues and public places and to provide for such lights as are necessary for the convenient transaction of public business," and it was held that the terms of the express grant of power to provide lighting for the public purposes named do not indicate any intention to give the distinct and larger power to *establish a plant* (involving taxation) for furnishing lighting for private use to all the inhabitants of the city who may desire it. See also Christensen v. City of Fremont, 45 Neb. 160, 63 N. W. Rep. 364; Village of Ladd v. Jones, 61 Ill. App. 584.

Erecting or establishing or procuring and operating a public utility plant may be a corporate or business function, while contracting, in connection with a franchise grant to a public service corporation, for service of a

public nature to its inhabitants may be a governmental power of a municipality.

Authority to make the contract for rates in this case is afforded by the general provisions conferred upon the city. Such authority is not inconsistent with special powers given the city and is not in derogation of any State law or rule of public policy in this State.

There being a contract fixing rates for electricity to be furnished by the utility company, and the Legislature not having authorized the city or any other governing body to regulate such rates, the question as to whether the contract rates are remunerative, is immaterial, and the contract controls until the Legislature does act in the premises. Columbus Ry. Power & Light Co. v. City of Columbus, Ohio, 249 U. S. 399, 63 L. Ed. 669, 39 Sup. Ct. Rep. 349, P. U. R. 239, 6 L. R. A. 1648; City of Cleveland v. Cleveland City R. Co., 194 U. S. 517, 24 Sup. Ct. Rep. 756; Lenawee County Gas & Electric Co. v. City of Adrain, 209 Mich. 52, 176 N. W. Rep. 590, 10 A. L. R. 1328; Miami Gas Co. v. Highleyman, 77 Fla. 523, 81 South. Rep. 775, and other authorities above cited; see also City of Moorhead v. Union Light, Heat & Power Co., 255 Fed. Rep. 920; Hillsdale Gaslight Co. v. City of Hillsdale, 258 Fed. Rep. 485; Knoxville Gas Co. v. City of Knoxville, 253 Fed. Rep. 217.

Affirmed.

WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.

## On Petition for Rehearing.

PER CURIAM.—The opinion of the Court draws no "theoretical difference between the power to *regulate* rates and the power to *fix* rates." 28 C. J. 574. Reference is made to rates fixed by the contract and the absence of legislative authority to *regulate* the particular rates complained of, which authority to *regulate* the rates, the Legislature may exercise at any time under the power to do so that is reserved to the State and conferred by Section 30 of Article 16 of the Constitution upon the Legislature to be exercised in its discretion. The "existence" of power to regulate such rates is in the Legislature under Section 30, Art. 16 of the Constitution; and the Legislature may "exercise" the reserved and vested power notwithstanding a contract rate. The reserved legislative power to regulate rates irrespective of contracts fixing or prescribing rates, does not deprive municipalities of the power to contract for rates within its charter powers. The reserved legislative power to regulate rates merely makes all contract rates subject to regulation notwithstanding the contract, and the power being reserved to change contract rates, a change duly made does not violate the obligation of the contract. 176 N. W. Rep. 590, 10 A. L. R. 1328; L. R. A. 1917-C 98. As between the municipality and the public utility company, contract rates are binding if duly stipulated for (Miami Gas Co. v. Highleyman, 77 Fla. 523, 81 South. Rep. 7.75; 28 C. J. 575); but the Legislature may at any time regulate the rates by due course of law. Town of Brooksville v. Florida Tel. Co., 81 Fla. 436, 88 South. Rep. 307.

The Legislature, in authorizing municipalities to contract for rates, and municipalities in making the authorized contracts, do not "contract or barter away their gov-

ernmental powers.'' Such authority to contract may be conferred under Section 8, Article 8, or Section 24 of Article 3 of the Constitution, *subject* to the reserved power of the Legislature under Section 30, Article 16 of the Constitution, to regulate the contract rates, by increasing or decreasing or otherwise changing them as the public welfare may require. It is not claimed that the Legislature has exercised its reserved power to regulate the rates here considered. The right to regulate exists in the Legislature; but this alone does not destroy the right to contract for rates. And the contract rates cannot legally be ignored except by consent of the parties thereto, or by legislative authority duly exercised. See 128 N. E. Rep. 58; 225 N. Y. 216.

Rehearing denied.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur.

TAYLOR, C. J., AND ELLIS AND BROWNE, J. J., concur in the opinion.