The Honorable Robert E. Stone State Attorney, Nineteenth Judicial Circuit of Florida
QUESTIONS:
1. May the state attorney's office expend state funds for the operation and maintenance of an aircraft obtained through forfeiture proceedings pursuant to s. 932.704, F.S. 1981?
2. May the state attorney's office expend state funds for additional flight training to qualify a certified pilot currently employed by the office for the operation of the above described aircraft?
SUMMARY:
The state attorney may expend properly budgeted funds to operate and maintain an aircraft forfeited by order of the court to the state attorney's office pursuant to s. 932.704, F.S. 1981, to be utilized by that office in investigative law enforcement functions and for the additional flight training of a present employee of the state attorney's office to qualify such employee for certification to operate such aircraft if the state attorney determines such expenses are necessary to carry out the duties and functions of his office.
According to your letter, the State Attorney's Office recently acquired a 1979 Piper Turbo-Arrow Aircraft by forfeiture proceedings pursuant to s. 943.44, F.S. (now s. 932.704, F.S. 1981). See Order, State v. One Piper Aircraft and One Dodge Ramcharger, Case No. 80-421-CA (Fla. 19th Jud. Cir., Oct. 9, 1981). You state that you plan to utilize the aircraft in the investigative law enforcement functions of your office including surveillance activity. An investigator supervisor in your office holds a private pilot's license; however, as the aircraft is classified as a high performance aircraft, this employee must obtain additional training in order to certify him to operate the aircraft.
Additionally, the Department of General Services has available an `umbrella' insurance program for state-owned aircraft at a much reduced rate than that available from an outside carrier; this program, however, also requires additional training of the employee in order to qualify for coverage. From information supplied to this office, it appears that this employee would undertake the operation of the aircraft in addition to his existing responsibilities and that the new duties assumed by this employee would not require his being replaced by another investigator nor require a new position description. Based upon the foregoing, you inquire as to whether you may expend state funds for the operation and maintenance of the aircraft and for the additional flight training of the employee to qualify him for certification to operate the aircraft.
AS TO QUESTION 1:
Section 932.703, F.S. 1981 (former s. 943.43, F.S.), authorizes the seizure of any vessel, motor vehicle, aircraft and other personal property which has been used or is being used to transport, conceal or convey contraband articles in violation of any provision of s. 932.702, F.S. 1981 (former s. 943.42, F.S.). Subsection (1) of s. 932.704, F.S. 1981 (former s. 943.44, F.S.), authorizes the state attorney within whose jurisdiction the contraband article, vessel, motor vehicle, aircraft or other personal property has been seized because of its use in violation of the statutes dealing with contraband, to proceed against such property to have such property forfeited to the use of or to be sold by the law enforcement agency making the seizure. See932.704(4), F.S. 1981, which provides in pertinent part that upon the request of any law enforcement agency which elects to retain titled property after forfeiture, the state shall issue a title certificate for such property to the agency. And see s.932.704(5), F.S. 1981, which requires any law enforcement agency receiving forfeited property in accordance with the provisions of the Florida Contraband Forfeiture Act to submit a quarterly report to the entity which has budgetary authority over such agency, which report shall specify, for such period, the type and approximate value of the property received; however, neither the law enforcement agency nor the entity having budgetary control shall anticipate future forfeitures or proceeds therefrom in the adoption and approval of the budget for the law enforcement agency. Cf. s. 287.16(3), F.S., which authorizes the Division of Motor Pool of the Department of General Services to require, in its discretion, every state agency to transfer its ownership, custody and control of every aircraft and motor vehicle to the department except when such aircraft or motor vehicle is usedprincipally for law enforcement or fire control purposes.
Law enforcement agency is not defined for the purposes of s.932.704, F.S. 1981; it was, however, pursuant to this section (formerly s. 943.44) that, according to your letter, the aircraft in question was forfeited to your office. Cf. s. 790.001(8)(f), F.S., which in defining law enforcement officer for purposes of ch. 790, F.S., relating to weapons and firearms, includes `[a]ll state attorneys . . . and their respective assistants and investigators.' Moreover, you state that the aircraft will be used in investigative law enforcement functions, including surveillance activities as outlined in ss. 27.15 and 27.255, F.S., as they relate to the state attorney's office. See s. 27.25(1), F.S., which authorizes the state attorney to employ investigators and s.27.255(1), F.S., which declares each investigator employed on a full time basis by a state attorney to be a law enforcement officer of the state and a conservator of the peace, under the direction and control of the state attorney who employs him, with full powers of arrest within the judicial circuit served by the employer/state attorney and the authority to make arrests outside of such judicial circuit when hot pursuit originates within the state attorney's circuit. Section 27.255 further provides that such investigators may carry weapons on or about their persons in the same manner as other law enforcement officers and, in the performance of any of their authorized powers, duties and functions, such investigators shall have the same rights, protections and immunities afforded other peace or law enforcement officers. Section 27.15, F.S., states that the Governor may, for good and sufficient reasons, require a state attorney to proceed to any place in the state and assist the state attorney holding office in the circuit where such place is located in the discharge of any of the duties of such state attorney. See also s. 27.14, F.S., which provides in part that the Governor may order the assignment of any state attorney of the state to discharge the duties of any other state attorney `with respect to one or more specified investigations, cases, or matters, which investigations, cases, or matters shall be specified in general in the executive order of the Governor,' and the assigned state attorney may designate one or more of his assistants and investigators to accompany and assist him in the performance of duties under the executive order; and Austin v. State ex rel. Christian,310 So.2d 289 (Fla. 1975) (Governor may assign any state attorney to discharge the duties of a state attorney in any investigation in any circuit of the state where, for any good and sufficient reason, he thinks that the ends of justice would thereby best be served). Cf. Johns v. State, 197 So. 791 (Fla. 1940); Hall v. State, 187 So. 392 (Fla. 1939) (state attorney is not only prosecuting officer in circuit in which he is appointed but is also a `state officer' in general matter of enforcement of criminal law, subject to assignment by Governor to any county in any circuit). Based upon the foregoing, it thus appears that the duties and responsibilities of the state attorney involve and concern law enforcement functions and that he (and his investigators) are authorized to conduct certain investigative law enforcement activities. See also s. 27.255(1), authorizing a state attorney's investigator to arrest any person for a violation of state law or applicable county or city ordinance within the judicial circuit served by the employing state attorney, except that arrests may be made outside of such judicial circuit when hot pursuit originates within such circuit. Cf. ss. 901.15 and 901.25, F.S.
When a general power has been granted to a public officer, unaccompanied by definite directions as to how the power or authority is to be exercises, such a grant implies a right to employ the means and methods necessary to comply with the statute. 67 C.J.S. Officers s. 103(a). Thus when the law imposes a duty or power on an officer, it also confers by implication such powers as are necessary for the due and efficient exercise of those powers expressly granted or such as may be fairly implied therefrom. See
In re Advisory Opinion to the Governor, 60 So.2d 285 (Fla. 1952); State ex rel. Martin v. Michell, 188 So.2d 684 (4 D.C.A. Fla., 1966), cert. discharged, 192 So.2d 281 (Fla. 1966); Peters v. Hansen, 157 So.2d 103 (2 D.C.A. Fla., 1963). Cf. Southern Utilities Co. v. City of Palatka, 99 So. 236 (Fla. 1923); Molwin Investment Co. v. Turner, 167 So. 33 (Fla. 1936). In addition, public funds may be spent only for a public purpose or function which the public officer is expressly authorized by law to carry out or which must be necessarily implied to carry out the purpose or function expressly authorized. See Davis v. Keen, 192 So. 200
(Fla. 1939); State v. Town of North Miami, 59 So.2d 779 (Fla. 1952). Since it appears that the state attorney may carry out certain law enforcement functions, including investigations, and as the aircraft and the ownership thereof was by court order forfeited pursuant to s. 943.44, F.S., as amended (now s. 932.704, F.S. 1981), to the state attorney's office for use by that office in carrying out those law enforcement functions, I am therefore of the opinion that the state attorney's office may expend state funds for the operation and maintenance of such aircraft to carry out those functions provided that such funds have been properly budgeted for by the state attorney's office. See generally s. 27.33, F.S., regarding the state attorney's annual budget. Cf. AGO 071-28 and Florida Development Commission v. Dickinson,229 So.2d 6 (1 D.C.A. Fla., 1969), cert. denied, 237 So.2d 530 (Fla. 1970) (before expenditure may be made, there must be a specific appropriation authorizing the expenditure in question).
AS TO QUESTION 2: Your inquiry also concerns the payment of training expenses of an employee of your office to qualify him for certification to operate the aircraft acquired by the state attorney's office.
Although the employee, an investigator supervisor, holds a private pilot's license, additional training is necessary in order for him to qualify for certification to operate this type of aircraft and to qualify for coverage under the state's insurance program for state-owned aircraft available at a much reduced rate through the Department of General Services. I have been informed that the Department of General Services has contracted with a private organization to train and certify those pilots operating with the department's aircraft. When the department increases the qualifications necessary to operate such aircraft, such training is provided by the private organization at the department's expense. By requiring high standards and qualifications of those who operate the state's aircraft, the department has been able to obtain insurance at a lower cost to the state. For purposes of participating in the state's `umbrella' insurance program for state-owned aircraft, however, it does not matter whether the employee of the state attorney's office obtains the additional training at a flight school, through the department, or by a certified flight instructor.
According to the information supplied to this office, the Comptroller has raised a question as to the propriety of the state attorney's office paying such training expenses based in part upon an informal opinion of this office to Mr. Doyle Conner, dated May 14, 1969, in which this office stated that `[i]f the additional training is required by federal or state regulations, merely as updating training not going to the qualification of the pilot to fly the aircraft, then the training would not be necessary training going to the qualification of the pilot but to improvements, whether of ship or pilot training, designed for the updating of safety and equipment of the aircraft, which may be paid from department funds when appropriated and budgeted as required by law.' And see AGO 072-113 and AGO 062-97, stating that public employees when employed should have the basic training necessary for their employment. As previously noted, however, the employee in the state attorney's office is not employed as a pilot but as an investigator supervisor; he will assume the responsibility of operating the aircraft in addition to his existing duties. Moreover, the assumption of these duties by the employee will not require a new job description. The assumption of these duties by the employee would appear to directly and substantially benefit the state attorney's office and increase the efficiency not only of the employee but of the office in carrying out its law enforcement functions. As previously stated, public funds may be spent only for a public purpose which the public officer or agency is expressly authorized by law to carry out or which must be necessarily implied to carry out the purpose or function expressly authorized. See AGO 071-28 and cases cited therein. It was my opinion in Question 1 that the state attorney had the authority to expend state funds to operate and maintain the aircraft acquired by his office through forfeiture proceedings to be used in fulfilling that office's law enforcement functions. The expense of operating and maintaining the aircraft, including the training of its personnel to operate and maintain such aircraft, may be deemed by the state attorney to be a necessary expense in carrying out the duties and responsibilities imposed upon his office by ch. 27 and s. 932.704, F.S. 1981. If the state attorney makes such a determination, such expenses may be paid from state funds provided that they have been properly budgeted for by the state attorney's office in accordance with applicable constitutional and statutory provisions. See AGO 071-28; Florida Development Commission v. Dickinson, supra. Accordingly, I am of the view that under the circumstances set forth herein that the state attorney may expend the funds of his office, if properly budgeted, for the additional flight training of an employee of his office to qualify such employee for certification to operate the aircraft forfeited to the state attorney's office if the state attorney deems such an expense to be necessary to carry out the duties and functions of his office.
Sincerely,
Jim Smith Attorney General
Prepared by: Joslyn Wilson, Assistant Attorney General