TAMPA ELECTRIC COMPANY, a Corporation, v.
C. C. WATSON, *et al.*

1 So. (2nd) 739
En Banc
Opinion Filed April 22, 1941

*Knight & Thompson, Peter O. Knight, C. Fred Thompson, Cook Harris, Barrett, McGlothlin & Dew, John D. Harris, H. L. McGlothlin,* for Petitioner;

*Charles F. Blake, Maybry, Reaves, Carlton & White, O. K. Reaves* and *Morris E. White,* for Appellees.

BUFORD, J.—We concur in most that is said in opinion prepared by Mr. Justice WHITFIELD in this case but, after careful consideration, we cannot concur in the conclusions and judgments reached and entered.

As we construe such conclusions and judgments, the effect will be to reverse the orders appealed from only to the extent that such orders struck from the bill of complaint allegations challenging the method used by the Utility Board in determining the proportion to be credited to the utility here under consideration of the value *pro tanto* of property located in the city of Tampa and used for the purposes of

this utility, together with other purposes; and challenging the propriety of the basis "present fair value" to determine the "just and true valuation" of the applicable investment, instead of using the investment or cost value of the property owned by the City of Tampa and used for the purposes of this utility.

It was recognized by the Utility Board, and is recognized by this Court, that not all property owned by Tampa Electric Company and located within the city of Tampa is to be figured in the involved fair value of the property of the utility company as a basis for rate making, but only that property which is being used exclusively for the purposes of this utility and that part of other unseverable property which is used *pro tanto* by this utility for the purpose of its function and is used at the same time for other purposes.

It is apparent from the record before us that some of the property involved is used for at least four separate and distinct purposes, viz.: (a) the operation of an ice plant or plants; (b) the operation of a street railway system; (c) the production of electric current for distribution of power and lights in a wide area beyond the limits of the city of Tampa, and (d) the production of electric current to furnish power and lights for the municipality and the public within the same.

The statutes referred to in the opinion by Mr. Justice WHITFIELD contemplate, and we hold, that for the purpose of fixing electric power and light rates within the city of Tampa, only the value of the property located within the city and devoted to the accomplishment of the purpose of furnishing electric power and lights to the city and public in the city may be taken into account.

It may be that some of the property is used exclusively for this purpose while other indivisible property is used simultaneously for this purpose and for one or more of the

other affiliated enterprises so as to require its *pro tanto* applicable value to be determined.

We are convinced that the method which appears to have been used by the board to arrive at the applicable value of the property which constitutes the investment in this utility is just as fair, equitable and practical as any which may be devised and that its use may logically result in arriving at the "just and true valuation" of the property investment and which valuation must be determined as the basis for fixing rates which may be charged for the particular service.

We are also of the opinion that the board was and is justified under the statute in using the present "fair value" of the applicable property as the basis of valuation for rate-making purposes instead of using the actual cost or investment value and making deductions or additions for depreciation or betterments.

We, therefore, conclude that certiorari should be awarded, the challenged orders affirmed, and the cause remanded to the court below.

So ordered.

CHAPMAN, THOMAS and ADAMS, J. J., concur.

BROWN, C. J., WHITFIELD and TERRELL, J. J., dissent.

WHITFIELD, J. (dissenting).—Application is made by the plaintiff below for a writ of certiorari under Supreme Court Rule 34 to review portions of an interlocutory order of the circuit court denying a motion to dismiss the bill of complaint with leave to amend, and striking stated parts of the bill of complaint. Petitioner is engaged in the sale and service of electricity within and without the city of Tampa, and also in the operation of an electric street car service. The questions to be determined involve the interpretation of some of the provisions of Chapter 20160, Special Acts of 1939, relating specifically to the valuation of the "invest-

ment" of the utility company in the process of regulating rates and charges for the sale and service of electricity in thé city of Tampa.

In view of the language contained in the title and in the body of Chapter 20160, the public service being regulated in this case must be regarded as being the *sale and service* of electricity in the city of Tampa, and not the rendering of street car transportation service. The several services, though for many years voluntarily unified in operation, may be regulated severally and separately as the law-making power determines. See Sec. 30, Art. XVI, Constitution of Fla., effective Jan. 1, 1887. Chapter 20205, Special Acts of 1939, provides for regulations of the rates for transportation by street cars propelled by electricity in the city of Tampa, Florida.

Section 30, Article XVI, of the Constitution of 1885 is as follows:

"The Legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discrimination and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature; and shall provide for enforcing such laws by adequate penalties or forfeitures."

This provision of the Constitution authorizes statutory regulation of all those engaged in rendering intrastate service of a public nature, the public service subjects to be regulated, and the nature, extent and method of the regulation, being for legislative determination within organic limitations. See Gainesville G. & E. Power Co. v. City of Gainesville, 63 Fla. 425, 58 So. 785; So. Utilities Co. v. City of Palatka, 86 Fla. 583, 99 So. 236, 268 U. S. 232, 45 Sup. Ct. 488, 69 L. Ed. 930, and authorities cited.

The "jurisdiction and powers" of the municipality are

prescribed by law, Section 8, Article XIII, Constitution. Special or local laws relating to municipal government prevail over inconsistent general laws on the same subject. Sec. 24, Art. III, Constitution; State v. Burr, 79 Fla. 290, 84 So. 61. Section 17 of Chapter 20160, Acts of 1939, provides that stated provisions of the Act are specific and controlling.

The quoted organic section does not define the rules and methods for its execution, but expressly vests the Legislature "with full power to pass laws" for the purposes stated in the section; and when valid statutory enactments prescribe the rules and methods for making rates and regulations to effectuate the "correction of abuses and to prevent unjust discrimination and excessive charges," such statutory enactments, as judicially interpreted, control, subject only to organic limitations.

The utility company is not required by law to operate its public street car transportation service jointly or interminglingly with its public service in the sale and service of electricity for light, heat and power purposes; and Chapters 20160 and 20205, Special Acts of 1939, enact provisions covering each of petitioner's two stated public services in the city of Tampa as a separate and distinct subject of statutory regulation, though they are both voluntarily operated by the same corporation. The statute operates prospectively, not retrospectively, and does not violate any organic property rights of the company. Such statute is clearly within the law-enacting power of the Legislature under the last-quoted organic section. Long continued voluntary and useful services in the combined operation by a single corporation of the two distinct services of a public nature do not affect the "full power" "vested" in the Legislature by Section 30, Article XVI, of the Florida Constitution, "to pass laws . . . to prevent unjust discrimina-

tion and excessive charges by persons and corporations . . . performing . . . services of a public nature." Statutes may regulate each distinct subject of public service severally as the law-making power may determine. The Constitution does not prescribe the method of public utility regulation except that it shall be pursuant to laws.

In State v. Broad River Power Co., 157 S. C. 1, 153 S. E. 537, the litigation was not as to rates, but the adjudication was the duty of the company to continue its unified transportation and electric light and power services under its franchises even though the transportation service was not profitable. The discussions in other somewhat similar cases in other jurisdictions cited for petitioner are governed by the differing facts and the controlling law in those cases severally. In this case the questions to be now determined are to be adjudicated according to the facts shown and the applicable and controlling statutory provisions under the Florida Constitution, where no provision of the Federal law is thereby violated.

The administrative board appointed under Chapter 20160 may exercise only such authority as is conferred upon it by statute; and the board must proceed in the exercise of its delegated administrative authority, duties and functions by such method as may be required by the law. See Secs. 15 and 17. Extracts from the title of Chapter 20160 and some of its provisions are:

"An Act Creating Tampa Utility Board for the City of Tampa, prescribing the Powers, Duties and Authority Thereof; Regulating the Sale and Service of Gas and Electricity Within the City of Tampa; . . . Giving said Board Power to Employ an Attorney, Rate Experts and Engineers; . . . Prescribing the Procedure for Investigations and Giving Said Board the Power, after Hearings, to Fix Rates within the City of Tampa for the Sale by Persons, Firms

or Corporations of Gas and Electricity; . . . Giving Tampa Utility Board Power to Prescribe Rules and Regulations Affecting the Sale of Gas and Electricity within the City of Tampa; . . . Providing the Procedure and Prescribing the Limitations of said Tampa Utility Board in Ascertaining and Promulgating just and Reasonable Rates, Tolls and Charges Governing the Users of Gas or Electricity within the City of Tampa, . . ."

"Section 3. Under the terms of this Act the word 'Utility' shall be taken to mean—' any person, firm or corporation who sells, within the City of Tampa to the public generally, or to any member thereof, gas or electricity for heating, lighting or power purposes. . . ."

"Section 4. All rates, tolls, contracts and charges, rules and regulations of utilities within the City of Tampa for gas or electricity sold within said City shall be fair, just, reasonable and sufficient, and such services and sales shall be rendered and performed in a prompt and expeditious manner, and the facilities, instrumentalities and equipment furnished by it shall be severally kept in good condition and repair, and its appliances, instrumentalities and services shall be modern, adequate, sufficient and efficient. All instruments used by said utility for the purpose of measuring quantities of gas and electricity sold shall be under the supervision of said Tampa Utility Board and shall be subject to inspection by said Board, its officers and employees at any time, and in the event said instruments shall be found inaccurate or otherwise defective it shall be replaced at once by said utility upon written notice given by said Tampa Utility Board."

"Section 6. Said Utility Board may upon complaint made to it by any interested person in the City of Tampa, or upon its own volition investigate the reasonableness of any rates charged by any utility in the City of Tampa, and shall order

a hearing thereon. It shall also have the power to investigate, through its own experts or engineers, the reasonableness of the rates, tolls and charges of any utility in the City of Tampa, and in the event it shall determine that any rate, charge or toll on either gas or electricity sold within the City of Tampa should be changed it shall give notice of said complaint or tentative finding to said utility and the utility shall have thirty days to file with said Utility Board such facts, evidence or other data which it may have to show why said rate, change or toll should not be changed, and at the end of said thirty days, said utility board shall give notice of a public hearing to be held ten days thereafter at which time said utility, or any interested person in the City of Tampa may produce such evidence, data, facts or other reasons at a public hearing before the Utility Board shall pass finally upon the matter of the charges, rates or tolls to be charged for the sale of gas or electricity, within the said City of Tampa. At the completion of said investigation, whether the same be upon complaint or voluntary, the receiving of data and evidence from the Public Utility at the public hearing, the said Utility Board shall, and they are hereby given full authority to make changes in the rates, charges or tolls of the utility and shall by resolution fix such rates, charges or tolls as in their judgment are fair and reasonable, and said resolution shall be published once a week for four weeks in a newspaper in the City of Tampa, and at the expiration of thirty days from the date of said Resolution, the rates, tolls and charges fixed therein shall become effective in the City of Tampa, and it shall be unlawful for any utility to collect or attempt to collect any greater rate, charge or toll than the one fixed in said resolution."

"Section 15. In arriving at any rate, charge or toll the Tampa Utility Board is hereby prohibited from making any

rate, charge or toll which does not give to the utility a return on its real and legitimate investment in the City of Tampa, of at least 7% on said investment, and the same powers herein vested in the Tampa Utility Board to determine the justness and fairness of rates, charges and tolls is hereby vested in said Board in determining the just and true valuation of the investment of the utility within said City."

"Section 17. The methods, control, jurisdiction, powers, authority and penalties prescribed in this Act are hereby declared to be specific so far as the control of rates, charges and tolls of utilities in the City of Tampa are concerned, and all laws and acts in conflict herewith are hereby repealed. This clause is not to be interpreted to repeal any of the present laws of the State of Florida affecting crimes, pertaining to the improper use or improper securing of gas and electricity by persons, firms or corporations."

All the provisions and limitations of the statute should be made effective if possible; and all must be interpreted with reference to the purpose, intent and limitations of the enactment. The title of the Act does not refer to regulations of the rates and charges for street car transportation. The evident meaning and intent of the specific and controlling statute, as it is applicable to this case, and as expressed in its title and body, are that the rates and charges for sales and service of electricity in the city shall be reasonable, just, fair and sufficient for continuing, adequate service efficiently rendered; and that the board shall not make any rate, charge or toll which does not give to the utility a return on "its real and legitimate investment in the City of Tampa," of at least 7% on said "investment" on "the just and true valuation of the investment of the utility within the city." The word "investment" is used in a *specific* and not general sense (Section 17 above), and necessarily has reference to

*the subject regulated,* viz.: the sale and service of electricity in the city. An "investment" of the utility which in whole or in distinct units, is used essentially for purposes other than the sale and service of electricity in the city, such as an "investment" for trucks, cars, barns, and other properties for street car transportation purposes or for other purposes, and not for the production, transmission, sale and service of electricity in the city, is not within the intendments of the provisions of Chapter 20160, which, as applicable to this case, regulates the sale and service of electricity in the city and not street car transportation. The subject regulated by Chapter 20160 does not include all of the utility company's investment in the City of Tampa, and the words "investment in the City of Tampa" cannot be given a meaning that is broader than the subject that is being regulated by the statute. The quoted words as used with reference to the nature of the "investment," if ambiguous, must be confined to the company's "investment" for the subject regulated.

The bill of complaint seeks to have enjoined the enforcement of the rates and charges for the sale and service of electricity in the city of Tampa, promulgated July 30, 1940, by resolution of the Tampa Utility Board under Chapter 20160, upon grounds in effect that such rates and charges were illegally ascertained and determined, in violation of Chapter 20160, and are unreasonable and invalid, and violate property rights of the utility company secured by the State and Federal Constitutions.

It is also prayed:

"(b) That the court adjudge, determine and decree under the provisions of Section 3 and 15 of said Chapter 20160, Laws of Florida, Acts of 1939, that the real and legitimate investment of the plaintiff in the City of Tampa includes all of plaintiff's properties, both electrical and street railway, located within the limits of the said City of Tampa;

"(c)   That the court adjudge, determine and decree that the phrase 'real and legitimate investment in the City of Tampa,' used in Section 15, Chapter 20160, Laws of Florida, Acts of 1939, means the actual investment made by the plaintiff in its electrical and street railway properties located within the limits of said city."

It is alleged in the bill of complaint:

"1.   That the Tampa Utility Board, on or about the 17th day of July, 1939, entered into a certain contract with Burns & McDonnell Engineering Company, a partnership, whereby said Board employed said firm to, among other things, 'make an inventory and appraisal of all electrical generating plants and transmission lines and substations which are used and useful in serving the electrical energy requirements of all classes of electrical consumers within and without the corporate limits of the City of Tampa, and including the entire street railway system 'the engineers agreeing' to appraise the entire property, then allocate to the rate base a sufficient amount of such generating and transmission facilities as are necessary for the efficient serving of the present and reasonable future needs of the consumers within the corporate limits of Tampa, and thus determine the rates within the corporate limits, it being understood by the parties hereto that the inventory and appraisal of that portion of property of the Tampa Electric Company located outside the corporate limits of the City of Tampa was for the sole purpose of determining the allocation of the operating costs of the property used and useful in furnishing electric energy and transportation facilities to consumers within the corporate limits of the City of Tampa.

"2.   That the Tampa Utility Board, without any hearing by said Board concerning plaintiff's rates and charges, received from its engineers, Burns and McDonnell Engi-

neering Company, a certain report dated February 27, 1940, in which certain valuations were determined and rates were recommended, . . .

"3. That thereupon said Tampa Utility Board, without giving notice or having any hearing, and based upon said report, adopted on February 28, 1940, a certain resolution. . .

"4. That by said resolution, and based upon said report of Burns & McDonnell Engineering Company, said Board undertook and purported to find, by a method of determination other than and in violation of that prescribed by Chapter 20160, Laws of Florida, Acts of 1939, and without plaintiff's knowledge or consent, and without a hearing, the value of plaintiff's property used in rendering electric service to consumers in the City of Tampa ; . . ."

The above allegations were admitted by the motion to dismiss.

The opinion of the circuit court filed with the order here reviewed contains the following :

"In arriving at the conclusion resulting in said order the court had in mind certain principles which seem to be the established law in rate making cases.

"It was contended by the plaintiff that the rate base should include all of the property owned by the plaintiff geographically located within the City of Tampa, including the Street Railway Department owned and operated by it, without regard to whether such property was used or useful in the manufacture, sale, and distribution of electricity to consumers within the City of Tampa.

"The defendants contended, on the other hand, that the property element entering into the rate base should include only the present fair value of the property of the plaintiff utility used or useful for the manufacture, sale, and distribution of electricity to consumers within the City of Tampa, and should exclude the Street Railway Department .

and exclude all other property not used or useful for such purposes, and that where property of the Utility was jointly used for rendering service to the consumers of electricity inside and outside the City of Tampa and to the Street Railway Department, there should be a fair and just allocation of the class of property.

"It was contended by the plaintiff that by the use of the phrases 'real and legitimate investment in the City of Tampa' and 'just and true valuation of the investment' as set forth in Section 15 of Chapter 20160, *supra,* that the Legislature intended that the Utility Board in determining the rate base should include all property of the plaintiff utility geographically located in the City of Tampa, whether used or useful for the purpose of manufacture, sale and distribution of electricity to consumers therein, and that in arriving at the 'just and true valuation of the investment' the Tampa Utility Board should have used the amounts of Plaintiff's investment in said property, without regard to its present fair value. "Section 15 of the Act must be construed in connection with the entire Act. It is clear that the legislative intention, as expressed by the entire Act, is that fair, just, and reasonable rates be fixed.

"It is, therefore, apparent that the entire Act, including Section 15 thereof, means (1) That the plaintiff's investment for rate-making purposes, for consumers within the City of Tampa, cannot include its street car department or other property except that which is 'used or useful' in the manufacture, sale and distribution of electricity to consumers within the City of Tampa, and (2) That the basis of valuation of such property should be its present 'fair value.'

"The court is also of the opinion that the scope of the judicial inquiry under the case presented is whether or not the rates prescribed by the rate order of the Tampa Utility

Board, as a whole, are so low as to deprive the plaintiff utility of a reasonable return upon the present fair value of its property used or useful in the manufacture, sale and distribution of electricity to consumers within the City of Tampa, which, in the case at bar, under the directions contained in the Act, shall not be less than 7%.

"These views will make it clear why the court has granted the motion to strike the several portions of the bill as specified in its order."

Section 17 of the statute provides that "the methods, control, jurisdiction, powers, authority and penalties. prescribed in this Act are hereby declared to be specific so far as the control of rates, charges and tolls of utilities in the city of Tampa are concerned, and all laws and Acts in conflict herewith are hereby repealed." This makes the valuations and rate-making methods prescribed and the authority to make rates delegated to the administrative board by the Act, specific and controlling as due process as far as they are prescribed in the statute. The board can make no legal rate or charge that is not determined by the methods prescribed and made specific and controlling by the Act itself. Delegated governmental authority must be exercised within the limits and by the methods that are legally prescribed in the law or other authorized means of delegating the authority.

The contention is in effect that as both services have for a long time been, and are being, operated jointly by the same company, the rate base for one service within the city should be upon a consideration of the value of the company's "investment" in the city whether for rendering one or both services. The controlling statute, Chapter 20160, Acts of 1939, does not require this. And organic property rights do not require it. The statute does require "the just and true valuation of the" utility company's "real

and legitimate investment in the city" to be determined for purposes of making just and reasonable rates and charges for the public service regulated by the Act, viz.: "The sale and service of electricity in the city." In this case the "investment" for the "sale and service of electricity" is intended to include the production, control and transmission of the electricity to be sold or serviced in the city. But the statute does not require the company's "investment" in the city made essentially for "the sale and service of electricity in the city," to include the utility company's "investment" made essentially for street car transportation purposes which is a distinct subject of statutory regulation.

The chancellor's opinion above quoted confines the statutory regulation to "the manufacture, sale and distribution of electricity to consumers within the City" of Tampa. A "sale and service of electricity in the City of Tampa" and delivery in the city to electric wires of others for transmission and consumption beyond the city, is covered by the statutory regulations.

The statute requires as a rate-making base for "the sale and service of electricity in the City of Tampa" "the just and true valuation of the" utility company's "real and legitimate investment in the City of Tampa," the sale and service of electricity in the city being the service regulated by the statute. This means the current just and true valuation of the company's real and legitimate investment in the city of Tampa for rendering the service of "the sale and service of electricity in the City of Tampa." The statute not only requires the investment to be considered but also requires the just and true value of the investment to be determined and considered. The rates to be predicated on such true and just value are for the future, not for the past. It is assumed that past rates were predicated upon

the true value with proper allowances for depreciation or losses from the original investment.

Section 15, Chapter 20160, above quoted, imposes definite, mandatory requirements and limitations upon the rate-making authority conferred by the statute; and Section 17 makes such requirements and limitations specific and controlling to the exclusion of "all laws and Acts in conflict therewith."

The provision of Section 15 that "the same powers herein vested in the Tampa Utility Board to determine the justness and fairness of rates, charges and tolls, is hereby vested in said board in determining the just and true valuation of the investment of the utility within said city," authorizes the use of experts and engineers and appropriate methods of procedure, but does not confer authority upon the board to make valuations of the company's properties outside the city, since the rate-making "powers" of the board so referred to do not give such authority to the board for rate-making purposes.

Valuations of the company's investment outside the city with those inside the city for the purpose of allocating to the city the values that are required to be made of the company's investment in the city for the authorized rate-making purposes, has no basis of authority in the statute. The authorized valuations should be made directly and not by the indirect method of allocation. The statute operates prospectively, and "the just and true valuation" of the company's "real and legitimate investment in the City" as a basis for future rates necessarily means the current or present "just and true valuation" of the company's investment in the city for the production, transmission, sale and service or delivery of electricity in the city of Tampa.

If the company's investment in the city is increased or used for producing and transmitting electricity in excess

of that sold and serviced or delivered in the city, such excess may be ascertained from proper sources within the territorial authority of the utility board and may be duly considered by the board for proper purposes in determining just, fair, reasonable and sufficient rates and charges for the sale and service or delivery of electricity in the city, such rates to include compensation for the production and transmission, as well as sale and service or delivery of electricity in the City of Tampa. The statute does not forbid increased or additional investments in the city for producing or transmitting additional electricity to be serviced or delivered outside the city limits. Such increased or additional investments would be beneficial to the city. But the use of such increased or additional investment for the production and transmission in the city of such excess electricity in connection with or as a part of the investment for electricity sold in the city, may be duly considered in making rates for the sale and service or delivery of electricity in the city. If such excess electricity is produced or transmitted by means of separate and distinct units of investment, such separate and distinct units of investment should not be valued in this case for purposes of the Act.

As the city grows, continuing increases in the company's "investment in the City" may be necessary for the continuous, adequate and efficient service of electricity to the city and its inhabitants that is required by the provisions and intendments of Section 4 and other sections of Chapter 20160.

The statute assumes that electricity, the sale and service of which is regulated, has been and will continue to be generated or produced in the city in deliverable form and manner for transmission control and delivery in the city; that investments have been and will be made in the city of Tampa to accomplish such continuing purpose; and that

reasonable and just rates and charges shall be made and enforced to secure the continuing, adequate and efficient service contemplated; and that for such service the utility company shall receive such reasonable and just compensation, to be at least 7 per cent on its said legitimate investment in the city, the valuation of such investment to be "just and true." The authority conferred upon the Utility Board is to effectuate the intent of the statute to regulate as a distinct subject of legislation the sale and service of electricity in the city, including the rates, charges and tolls for such sale and service. The statute contemplates the uninterrupted continuance of efficient and prompt rendering of adequate heat, power and light electrical service in the city as a continuing, needed service to the city and its inhabitants and as a continuing business enterprise beneficial to the city and its inhabitants. Stability and efficiency of the service and reasonableness of rates and charges within the stated limitations are the objectives sought; and governmental supervision and regulation are intended to be so exerted as to accomplish such objectives.

When a statute delegates to an administrative board authority to determine and prescribe rates for services of a public nature and requires such determination of rates to be predicated upon stated requirements, the order or resolution making the rates when not made *prima facie* valid by statute, should contain definite statements of ultimate facts showing a compliance with the requirements of the statute.

The rate-making resolution of the administrative board does not import verity on its face and the statute does not make the resolution *prima facie* a just, fair, reasonable and sufficient determination of rates and charges promulgated by the administrative board; and the resolution does not contain definite statements of ultimate facts showing a due compliance with the mandatory requirements of the statutes

in determining "just, fair, reasonable and sufficient" rates.

The resolution does recite:

"1. That the present rates and charges of Tampa Electric Company for the sale of electricity within the City of Tampa are unfair, unjust and unreasonable.

"2. That said rates and charges for the sale of electricity within the City of Tampa should be changed by being reduced in accordance with the views expressed in the opinion of the Board in this matter this day filed.

"3. That the rates in the schedules hereinafter set out are, in the judgment of Tampa Utility Board, fair and reasonable and sufficient to give said utility a return in excess of seven per cent (7%) on its real and legitimate investment in the City of Tampa properly allocable to said City and to provide allowance for annual depreciation, taxes and operating expenses of said utility."

Allocations of values from total valuations of all or other investments of the company within and without the city limits, are not authorized by the statute as a basis for rate-making in the city of Tampa under the statute.

No legal rates or charges for the sale and service of electricity in the city of Tampa can be made by the board except in compliance with the specific, mandatory requirements of the statute; and the resolution proclaiming rates to be enforced should by distinct statements of ultimate facts show such compliance.

The statute does not affect utility service or investments outside the city, or contemplate that the valuation of the utility company's "real and legitimate investment in the City of Tampa" shall be made by an allocation of values from the total valuation of all of the company's public service investments in or out of the city; but the statute specifically and mandatorily provides for a "just and true valuation" of the utility company's "real and legitimate in-

vestment in the city of Tampa"; and as the statutory regulation as applied to this case is confined to the rates and charges for the sale and service of electricity in the city of Tampa, which assumes production, transmission and delivery of the electricity in the city, the investment to be valued in this case must be for such regulated service and not for street car transportation or other distinct service; and the statute contemplates "the just and true valuation" to be made directly and not indirectly by way of allocation from aggregated valuations of all of the utility company's investments for all public service purposes within or without the city.

By saying that the "real and legitimate investment in the City of Tampa" can not be based on an allocation made in the manner in which the allocation appears to have been made by the board in this case, we do not mean to hold that in determining the "just and true valuation" of any particular item of property physically located in the City of Tampa which is not severable for valuation purposes but which is intended for use and is used, simultaneously and coördinately in connection with the utility company's light and power service distributed and furnished to the city of Tampa and its inhabitants, the rates of which come within the purview of the Act now under consideration, and in connection with the generation of current for the operation of the street railway system and/or in connection with the electric power and light service furnished beyond the. municipal limits of the city of Tampa or for all three such purposes, that the "just and true valuation" of such property or instrumentality may not be determined and that value be apportioned on some fair and logical basis between the electric light and power service furnished within the city of Tampa and the street railway service and the electric light and power service furnished and distributed outside the city

of Tampa according to the relative benefits accruing to each branch of the utility through the use of such property or instrumentality. Indeed, we hold that such calculation and apportionment should be made. That is to say, if it be shown that a power house is used to house machinery which in turn is used to generate electrical current to supply the demand for lights and power distributed to consumers within the city and which is also used to generate current for the use of the street railway system and which is also used to generate current to supply light and power distributed outside the city of Tampa, and it be shown that the first described service required 50 per cent and the second service requires 40 per cent and the third service requires 10 per cent of the total current generated in that power-house by those machines then 50 per cent, and no more, of such total, "just and true valuation" of such powerhouse and machinery should be taken into account in determining the "real and legitimate investment in the City of Tampa" to be used in determining the basis for fixing rates to be established for the service here under consideration.

Allegations of the bill of complaint admitted by the motion to dismiss and the resolution of July 30, 1940, tend to show that the exclusive statutory method of "determining the just and true valuation" of the utility company's "real and legitimate investment in the City of Tampa" was not pursued or was not made determinative of the investment value as a basis for rate-making in this case; and the motion to dismiss the bill of complaint was properly denied with leave to amend.

The "method" of making valuations and rates prescribed by the statute is specific, mandatory and exclusive. Sec. 17 of the Act. The validity of rates is affected by the use of unauthorized methods of making valuations of "investment" property as a rate-making basis.

Pertinent and appropriate allegations of ultimate facts relative to the method used in making the promulgated rates, and to the validity of rates made by the board, may be offered as amendments to the bill of complaint if so advised.

Both the City and the utility company have a right to fair and reasonable opportunity to adduce evidence and to be heard on the issues duly made to be determined under the statute by due course of controlling law.

Stricken allegations which may be pertinent to issues sought to be made pursuant to this opinion may be reinstated by the Court.

An interlocutory writ of certiorari should be allowed and the cause remanded for appropriate proceedings consistent with this opinion.

BROWN, C. J., and TERRELL, J., concur.

TERRELL, J. (concurring).—I concur in the views of Mr. Justice WHITFIELD but I think the properties of petitioner should be evaluated on the "prudent investment rule."

BROWN, C. J., and WHITFIELD, J., concur.