264 So.2d 7 (1972)
WESTWOOD LAKE, INC., a Florida Corporation, Petitioner,
v.
DADE COUNTY, a Political Subdivision of the State of Florida, Metropolitan Dade County Water and Sewer Board, a Governmental Agency of Dade County, Florida, et al., Respondents.
No. 41116.
Supreme Court of Florida.
April 5, 1972.
*8 Patton, Kanner, Nadeau, Segal & Stobs, Miami, for petitioner.
Stuart Simon, Dade County Atty., and John G. Fletcher, Asst. County Atty., for respondents.
DEKLE, Judge.
Petitioner, Westwood Lake, Inc. (hereafter referred to as "Westwood" or "utility"), is a private utility company doing business in Dade County. In 1964, the respondents, Dade County and the Metropolitan Dade County Water & Sewer Board and the Board's individual members (hereafter "Board"), summoned Westwood to appear to determine Westwood's rates. The Board excluded from the rate base "customer contributions." ("Customer contributions" are so called because of equipment or lines already installed, as in a subdivision, and the initial cost of which is included in the price of customers' property and so is considered as having been paid and the cost "recovered".)
Westwood brought petition for certiorari in the Circuit Court of the Eleventh Judicial Circuit which was denied. An appeal to the Third District Court of Appeal followed. In its opinion reported at 203 So.2d 363, the Third District affirmed in part and reversed in part. It upheld the exclusion by the Board of "customer contributions," but held that the rate had not been properly determined on other grounds.
That decision recognized the proposition that the distribution system of the utility having been paid for by the homeowners it served (when they purchased their premises) was in effect "contributed" to the utility and is therefore to be excluded from the rate base. The cause was remanded to the circuit court for further proceedings but instead the present declaratory decree was filed in a new action, contesting the constitutionality of the Dade County Water and Sewer Regulatory Ordinance, specifically § 32-65(c), Metropolitan Dade County Code,[1]as it applied to Westwood. The method provided in the ordinance is usually described as the "prudent investment" theory (or "original cost" basis) of fixing rates.
The Circuit Court granted the Board's motion for a judgment on the pleadings, declaring the ordinance constitutional as a matter of law. In its affirmance the district court's opinion at 246 So.2d 156, 158, here under review, cites the authorities upholding such ordinance provisions *9 and the proposition that contributions in aid of construction may be excluded from the rate base.[2] This would seem to end the matter but there can of course be an unconstitutional application of the ordinance as to a utility if it deprives that utility of a fair rate and thereby deprives the utility of its property without due process of law. There must be a fair application. It is this point (in its application) that the ordinance is now before us under the utility's contention that in its application it may be unconstitutional as to it and desires for this to be determined by the circuit court upon hearing.
The gravamen of the complaint for declaratory decree was not whether the principle of "customer contributions" under the "investment" method of determining rates required by the ordinance was unconstitutional vel non or per se. The utility apparently recognizes the constitutionality of the provision itself, as it must, for the authorities stoutly support it.[3]
Westwood's contention here is that the Dade Ordinance is being unconstitutionally applied to it,[4] so that the resulting rate base is confiscatory and deprives the utility of a constitutionally guaranteed fair return on its investment. It states that the investment theory as it is being applied to Westwood becomes confiscatory. City of Miami v. Florida Public Service Comm., 208 So.2d 249 (Fla. 1968).
Southern Gulf, supra, 180 So.2d at 483, recognizes the proposition here contended by Westwood that the Ordinance in its APPLICATION "must be considered" in arriving at the rate base, although it concluded that the findings in that case were valid. The considerations noted there which might affect the "end result," i.e., the rate base reached, included the amounts of the contributions claimed, the times when such contributions were received and costs expended in their collection, etc. There are, of course, others but the point to be recognized is that the arbitrary application of a prudent investment theory (without regard to the final rate result as to its adequacy) may in a given case deprive a utility of a fair rate and might be confiscatory, depending upon the factual showing. This showing has never been considered in the present case by the trial court and no declaratory decree thereon has been reached. It must be remanded for such purpose.
The "end result" doctrine above referred to was first adopted in Florida in Jacksonville Gas Corp. v. Florida Railroad & Public Utilities Comm., 50 So.2d 887 (Fla. 1951), in the incisive opinion of our late distinguished Mr. Justice Thomas who said:
"It was the commission's view that it should be `free to follow such method ... as (it) may choose so long as the end results are rates which are just and reasonable.' ... At first we were disposed to criticize such reasoning because we thought one could not evaluate a conclusion without examining the course followed in reaching it; in other words, the product of .07X could not be judged properly without isolating and defining `X.' But upon further study we became convinced that the `end result' is to be weighed in terms of justness and *10 reasonableness, having consideration for all circumstances that in the sphere of finances affect and influence investments of this sort. This so-called `end result' is made fluctuant by the variant in percentage and the flexibility of justness and reasonableness."
We reaffirmed the "end result" concept in General Telephone Co. of Fla. v. Carter, 115 So.2d 554 (Fla. 1959), and thereafter in City of Miami v. Florida Public Service Comm., supra, in which we quoted the Supreme Court of the United States in saying:
"... Under the statutory standard of `just and reasonable' it is the result reached not the method employed which is controlling... ."
Federal Power Comm. v. Hope Natural Gas Co., 320 U.S. 591, 64 S.Ct. 281, 88 L.Ed. 333 (1944).
There appear factual issues raised by the pleadings in the application of the ordinance which constitute conflict with the prior decision of this Court in Flaherty v. Metal Products Corp., 83 So.2d 9 (Fla. 1955), as well as decisions of district courts of appeal; Kendall Flying School, Inc. v. Robertson, 225 So.2d 344 (4th DCA Fla. 1969); and Davis v. Davis, 123 So.2d 377 (1st DCA Fla. 1960), on the same points of law. We have jurisdiction under Fla. Const. art. V, § 4, F.S.A.
Dade County suggests that Carol City Utilities Inc. v. Dade County, 143 So.2d 828 (3d DCA Fla. 1962), cert. dischg'd, 152 So.2d 462 (Fla. 1963), prohibits a declaratory judgment action in the case sub judice. That decision applies where there is an outstanding rate order before a court for review. In the instant case, there is no such rate order. It is correct that the Board entered a rate order applicable to Westwood, but that order was quashed by the circuit court upon directions of the Third District Court of Appeal in proceedings prior to this action for a declaratory judgment. Therefore, the Carol City Utilities case does not prevent a declaratory judgment in this cause.
It is contended by the utility that the only portion of plant assets and equipment being recognized by the Board as a basis for its rate is $1-million of a plant whose "fair value" is $5-million ($2.6 million representing actual original cost). It is urged by the county that the remaining $1.6 million (of $2.6 million) is really represented by "contributions" to the utility in the subdivision's construction and tax write-offs and has been thereby "recovered" and cannot be included in the tax base. (See Westwood v. Metro Dade, 203 So.2d 363 at 367 (3d DCA Fla. 1967))
The lower court's only constitutional determination here was that the "prudent investment" ordinance was not unconstitutional per se or vel non. In the initial district court opinion the court expressly refrained from passing upon any constitutional question (203 So.2d 363 at 368).
The utility is justified in its contention that there should be a declaration of its position and rights prior to the Board proceeding to hear detailed testimony. The great expense and time involved, if it were first necessary to go before the Board and then to take an appeal, are thus saved. It is apparently recognized by all parties that the Board's position is clearly that only the investment theory will be applied and in the manner previously used without regard for its effect upon the ultimate rate; that it intends in the future as it has in the past to base its rates solely upon a literal application of the "investment" theory and in no wise to allow any credit applying to so-called "contributions" or costs related to them or other consideration, no matter what the result. It is this arbitrary application which can constitute an unconstitutional application, dependent upon what the resultant rate turns out to be.
It is claimed by the utility that the Board's reasoning is a fallacy in this instance because a part of the "contribution" *11 being "deducted" was in effect only a "paper transaction," applied as a recognized tax advantage as a "deferred tax reserve"; that "contribution" is a misnomer and in fact the pipe lines, etc., are a part of the plant which must be replaced in the future by the utility; that this "contributed" equipment is an indispensable part of its plant that will be constantly deteriorating; that a depreciation factor is essential in order to allow the utility to recoup its recurring losses so that at the time of the total depreciation of such assets, there will be funds available for replacement; that otherwise at such point the utility would not have a whole plant to serve its users; that this is a recognized business practice (of depreciated loss) which should be considered in determining the rate base, and other related contentions. All of this is for the trial court's evaluation in declaring whether there is or is not an unconstitutional application of the ordinance to Westwood under its facts, which deprives it of a fair return or amounts to a confiscation of its property.[5]
The Third District Court of Appeal in Southern Gulf Utilities Inc. v. Metro Dade County Water & Sewer Board, 180 So.2d 481 (3d DCA Fla. 1965), rejected an outright inclusion in determining a tax base of a "contribution in aid of construction" factor BUT by its holding the court recognized that such a factor might be considered if there were facts supporting it, to the extent that may be shown. There the uncollectable contributions were added to the rate base. The rate base may therefore, upon such a proper showing, take such matters into account in fixing the rates. If, for example, a factual showing were made to justify a depreciation reserve to meet losses which would occur, and that absent such consideration, the resulting rate would be an unfair return, then this would be a factor for consideration to be included in the rate base. Such facts must be fairly considered in determining the rate base, if necessary to reach a fair rate, and to the degree or extent necessary to do so. In such a posture, to disregard arbitrarily that part of a utility's equipment because it was "contributed" and to allow no recognition of its replacement ignores reality; it would only mean a raise in rates later on when it became necessary to replace it. A depreciation loss factor may be proper if necessary to prevent a resulting unfair rate, because its purpose is to save against loss and this must be anticipated. The consideration is not confined to a "recovery of investment" application, as the county has treated it. It cannot be eliminated entirely from the present rate base if it prevents a fair return. What if an entire utility were made up of such "contributions"? Then is it to be said that no part of the plant is to be considered in the rate base? The utility would not long survive on such basis.
Westwood contends that under the Board's view, the rate to be allowed would "not even allow Westwood its total operating expenses, much less provide it a return on its rate base." These are the showings to be made before the trial judge.
The utility submits that even if "direct contributions" by way of equipment paid by customers is recognized it should not have deducted from the rate base what it terms "imputed" contributions. The latter contribution includes certain tax benefits to the subdivider which was at the time a division of the utility company which put in the subdivision. The county of course has considered this as a further "contribution in aid of construction" and it *12 may turn out upon hearing that this or part of it either may or may not be deducted from the rate base, depending upon whether it would result in a fair rate being established, so that the ordinance is not unconstitutionally applied. This is a part of the factual application which is to be made by the trial court and a declaratory decree entered as a guide for the more involved proceedings on rates which would thereafter be heard by the Board following such guidelines.
Florida Cities Water Co. v. Board of County Com'rs of Hillsborough County, 244 So.2d 737 (Fla. 1971), confirmed as not being a denial of equal protection, the practice in Dade County of using a rate base established solely upon the utility's original cost (or "investment") in the system, and not allowing customers' contributions. In other counties (served by the Public Service Commission) the utility receives the benefit of including customer contributions in its rate base. The proposition nevertheless remains that a loss factor by way of depreciation may be taken into account in a fair and reasonable manner which would give consideration to the "contributions" here IF it takes that (or a portion of it) to assure a rate of fair return.
Under the facts suggested by Westwood as not yet allowed to be shown, the application of an arbitrary and sole test of investment only might cause such an inequitable result as to deny Westwood a fair return on its investment, thus depriving Westwood of its property without due process of law, dependent upon what facts may be shown. This would of course mean that arbitrarily applying the prudent investment theory in such manner would be unconstitutional as applied to Westwood's situation. Such showing has never been considered or ruled upon in this light by the circuit court. An opportunity to do so should be given before proceeding with the actual rate hearing before the Board, since it has been made known that the sole literal application of the investment theory is all that the Board is going to allow unless guided differently by court decree.
Another factor of interest in this connection is the Board's announced position that it intends to apply test years for rates based upon the designated period beginning September 1, 1962, to August 31, 1963, and each year thereafter. Whatever a base year may show, it apparently is intended that the same rate should carry through arbitrarily for other years involved. On the face of it this would not appear to allow a fair application of rates which of course vary in a utility, dependent upon investments and circumstances from year to year. Rate making is prospective, not retroactive, and therefore the test years should be the most current time in relation to the hearing date to fix rates for the future. This is another factor to be considered by the trial court in its weighing of the application of the ordinance as proposed to be applied by the Board, in making a declaration of the rights of the utility in this regard.
These and other factors warrant a factual consideration by the circuit court in the declaratory decree action for which the cause should now be returned for that purpose prior to a consideration of rates before the Board.
Certiorari is granted and the decision of the Third District Court affirming the judgment on the pleadings is quashed. The cause is remanded for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C.J., and ERVIN, CARLTON and ADKINS, JJ., concur.
NOTES
[1] "Investment basis of fixing rates. In fixing and determining just and reasonable rates and charges the board shall investigate and determine the actual legitimate costs of the property of each public utility, actually used and useful or having present value for future use in the public service, which costs as determined by the board shall be utilized for rate-making purposes, and shall be the money honestly and prudently invested by the public utility in such property used and useful in serving the public, less accrued depreciation, and shall not include any good will or going concern value in excess of payments made therefor."
[2] Southern Gulf Utilities, Inc. v. Metropolitan Dade County Water and Sewer Board, 24 Fla. Supp. 60 (Dade Cir.Ct. 1964) aff'd 180 So.2d 481 (3d DCA 1965); app. dism'd, 188 So.2d 810 (Fla. 1966); cert. denied 192 So.2d 493 (Fla. 1966). Florida Cities Water Company v. Board of County Commissioners, Hillsborough County, 244 So.2d 737 (Fla. 1971).
[3] Id.
[4] "It is a well-recognized principle of law that a statute or ordinance may be valid as applied to one set of facts, though invalid in its application to another set of facts." Ex parte Wise, 141 Fla. 222, 192 So. 872, 875 (1940); Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 So. 282, 284 (1914); Cedar Street Co. v. Park Realty Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389.
[5] "`[A]lthough the governmental agencies having authority to deal with the subject may fix and enforce reasonable rates to be paid public utility corporations for the services by them rendered, that power does not include the right to fix rates which are so low as to be confiscatory of the property of such corporations.'" Southern Utilities Co. v. City of Palatka, 86 Fla. 583, 99 So. 236, aff. 268 U.S. 232, 45 S.Ct. 488, 69 L.Ed. 930 (1924) (quoting from Southern Iowa Electric Co. v. Chariton, 255 U.S. 539, text 541, 542, 41 S.Ct. 400, 401, 65 L.Ed. 764.