SCHEB, Chief Judge.
Southeastern Development and Utility Company, Inc., challenges the trial court’s order setting aside a rate increase which the Board of County Commissioners of Sarasota County had granted it.
Southeastern is a privately owned water and sewer company in Sarasota County holding a franchise which was granted by the Board and which is subject to county ordinances. Section 6(g) of ordinance 72-64 provides:
The board shall fix and determine a rate which allows for reimbursement of operating costs and a fair and reasonable net return on the original cost of a system to the person first dedicating it to public service, which shall not include contributions in aid of construction [CIAC] or customer contributions.
Section 2(c) of the ordinance empowers the Board to “[r]equire every public utility to charge a fair and reasonable sum as an operating expense annually for depreciation and to credit the sum so charged to a depreciation reserve which shall be charged with retirement of depreciable property from service.”
Southeastern filed for a rate increase under section 6(g). It sought to include depreciation of CIAC property as an operating expense. After rate consultants for both Southeastern and the Board made presentations at a public hearing, the Board on November 6, 1979, adopted a resolution granting Southeastern a substantial portion of the rate increase it had requested and allowing it to recover depreciation on CIAC property as an operating expense.
Hawkshead Homeowners Association, Inc., composed of approximately 400 of
Southeastern’s utility customers, petitioned the circuit court for review of the Board’s resolution. After considering the record before the Board and briefs of counsel, the court on May 12, 1980, quashed the Board’s rate order. In doing so the court concluded:
A review of the record herein fails to reveal sufficient competent, substantial evidence to support the finding of the Board in granting the application of Southeastern Development and Utilities Company, Inc. to amend and increase its rate structure.
The record fails to disclose evidence that would support the amounts claimed and billed as “connection charges;” claimed reserves for depreciation, deterioration and/or replacement of equipment were fictitious, no such reserves having been established and although on one hand the utility company maintained its complete independence of the subdivision developer by claiming depreciation for articles given to it at no cost by the developer, the utility also claimed an allowance for unsold and undeveloped lots in the subdivision that were, are and remain the property and concern of the developer, claiming the utility plant must have excess capacity to serve future customers and the costs of such should be borne by present utility customers. The record accordingly suggests that the rate base herein may have been improperly inflated.
Shortly after that, the Board modified its resolution to comply with the court’s order by eliminating the connection fees and the allowance for depreciation on CIAC property. The Board then announced that it did not intend to appeal, and the court granted Southeastern’s motion to intervene. Southeastern then filed this appeal which we treat as a petition for a writ of certiorari. Fla.R.App.P. 9.040(c). See Briggs v. Salcines, 392 So.2d 263 (Fla. 2d DCA 1980).
We must determine if the trial court departed from the essential requirements of law in quashing the Board’s resolution. Chicken ‘N’ Things v. Murray, 329 So.2d 302 *884 (Fla.1976); Hardin v. City of North Miami Beach, 364 So.2d 843 (Fla. 3d DCA 1978). As we read the trial court’s order, the court reached three conclusions. First, it determined that there was no evidence supporting the amounts claimed as connection charges. Second, the court concluded that since Southeastern had not established a reserve for accumulated depreciation on CIAC property, it could not collect that expense. Finally, it determined that the utility claimed an allowance for unsold and undeveloped lots in the subdivision that were the property of the developer.
We first address the collection of a depreciation expense on CIAC property. Hawkshead argued before the trial court that since Southeastern had no cost basis in its CIAC property, the Board was not authorized under section 6(g) to allow it to collect the replacement cost of that property as an operating expense. While section 6(g) does preclude CIAC property from being included as part of the utility’s rate base for calculating a fair return on its property, it does not bar the utility from including its depreciation of CIAC property as an operating expense. Further, section 2(c) empowers the Board to permit inclusion of depreciation as an operating expense and does not distinguish between CIAC property and property purchased by the utility. Thus, we conclude that the ordinance authorizes the Board to allow depreciation on CIAC property as an operating expense. This is a logical interpretation because a depreciation allowance is necessary to accumulate a fund for replacement of not only the portion of the plant provided by the utility but also the portion contributed in aid of construction. Both the Board’s consultant and Southeastern’s consultant testified that if the Board did not allow Southeastern to include depreciation on CIAC property as an operating expense, it would have to allow it to be recovered in some other way. Finally, the supreme court has sanctioned including depreciation on CIAC property as an operating expense for utilities for this purpose. Westwood Lake, Inc. v. Dade County, 264 So.2d 7 (Fla.1972). See State v. Hawkins, 364 So.2d 723 (Fla.1978).
Section 2(c), however, requires the utility “to credit the sum so charged to a depreciation reserve.. . . ” The trial court concluded, apparently on the basis of this language, that since Southeastern had not established a reserve account for the depreciation expense on CIAC property, it was not entitled to collect the expense. Rather than quashing the Board’s resolution, however, the court should have ordered the establishment of this reserve as a condition to collecting the depreciation. If this fund is not available to replace CIAC equipment as it wears out, Southeastern will have to return to the Board for replacement funding. As the supreme court stated in West-wood Lake:
[T]o disregard arbitrarily that part of a utility’s equipment because it was “contributed” and to allow no recognition of its replacement ignores reality; it would only mean a raise in rates later on when it became necessary to replace it. A depreciation loss factor may be proper if necessary to prevent a resulting unfair rate, because its purpose is to save against loss and this must be anticipated.
264 So.2d at 11.
The trial court also concluded that the utility had improperly claimed an allowance for lots owned by the developer. We find no evidence supporting this conclusion, however. As a third ground for quashing the Board’s resolution, the court determined that “the record fails to disclose evidence which would support the amounts claimed and billed as ‘connection charges.’ ” The amounts of the connection charges, however, were not an issue at the Board’s hearing, only how the charges should be treated in determining a reasonable rate of return to the utility on its investment. Further, the fees had been authorized in the past, and there was no change in them. Thus, it was not incumbent upon Southeastern to produce evidence supporting the amounts charged at the hearing, and the court erred in ruling that Southeastern was not entitled to collect the connection charges since it had not introduced any supporting evidence.
*885 In summary the Board properly permitted Southeastern to collect connection charges and to charge a depreciation expense on CIAC property. Further, there is no evidence supporting the trial court’s statement that the utility claimed an allowance for lots owned by the developer. Consequently, the trial court departed from the essential requirements of law in setting aside the rate increase which the Board had granted to Southeastern.
We grant certiorari, quash the circuit court’s order, and remand for further proceedings consistent with this opinion.
GRIMES and CAMPBELL, JJ., concur.