## NORTH MIAMI BEACH UTILITY COMPANY v. METROPOLITAN DADE COUNTY WATER & SEWER BOARD
### No. 81-116 AP
Circuit Court, Eleventh Circuit, Appellate Division
April 9, 1982

J. Frost Walker III, Esq., Blackwell Walker & Gray, for appellant.

Robert A. Ginsburg, Dade County Attorney and Burt L. Sanders, Assistant County Attorney, for appellee.

Before RIVKIND, KORVICK & GOLDMAN, J.J.

GOLDMAN, Judge.

NORTH MIAMI BEACH UTILITY COMPANY (UTILITY), a privately owned utility, appeals from a final order of METROPOLITAN DADE COUNTY WATER AND SEWER BOARD (BOARD) reducing UTILITY'S annual revenues. We affirm upon our finding that the reduction of utilities rates did not deny to UTILITY a fair rate of return on its investment. *Westwood Lake, Inc. v. Dade County,* 264 So. 2d 7 (Fla. 1972).

On November 26, 1957, the CITY OF NORTH MIAMI BEACH (CITY) passed Ordinance No. 776 which granted to UTILITY the right to construct, operate and maintain sewerage facilities for areas located within the CITY. That ordinance established a maximum, initial franchise rate schedule. On June 16, 1959, City Ordinance No. 1042 revised upward the franchise rate schedule. In 1974 UTILITY sought to implement the maximum rates allowed under the rate schedule authorized by Ordinance No. 1042 apparently to offset the cost of constructing a new sewer treatment plant.

BOARD, on its own motion, initiated a rate review proceeding against UTILITY by the issuance of an order to show cause why the rates of UTILITY should not be reduced. On September 16, 1980, a staff report was prepared recommending that BOARD reduce UTILITY'S rates by some $122,000. Thereafter, public hearings were commenced

by BOARD on the question of whether UTILITY'S rates should be reduced. BOARD determined that it had jurisdiction to reduce UTILITY'S rate. BOARD contended that it could set new rates for UTILITY "based on reasonable review" of UTILITY'S accounting records. BOARD twice continued the public hearing due to the complexity of the questions presented. Thereafter, on Feburary 26, 1981, BOARD rendered the order under review reducing UTILITY'S rates. Notice of appeal was thereafter timely filed by UTILITY.

Article 8, Sec. 11 of the Florida Constitution, known as the "Dade County Home Rule Amendment", provides in pertinent part, that the electors of Dade County are granted power to adopt a "Home Rule Charter of Government for Dade County, Florida, under which the Board of County Commissioners of Dade County shall be the governing body." This charter may grant full power and authority to the Board of County Commissioners of Dade County to pass ordinances relating to the affairs, property and government of Dade County and to do everything necessary to carry on a central metropolitan government. The Dade County Home Rule Charter was adopted pursuant to that constitutional provision in 1957. Sec. 1.01 (a) provides that the Board of County Commissioners shall be the legislative and the governing body of Dade County and shall have the power to carry on a central metropolitan government. This power shall include the power to "regulate, control take over and grant franchises to or itself operate . . . sanitary and sewerage collection and disposal systems" as well as the power to "exercise all powers and privileges granted to municipalities . . . and all powers not prohibited by the constitution or this charter."

In other words, the Metropolitan Government of Dade County is vested with the power to perform functions which would be most effectively carried on under a uniform plan of regulation applicable to the County as a whole. *Miami Shores Village v. Coward,* 108 So. 2d 468 (Fla. 1958). Under the foregoing provisions, the Board of County Commissioners exercises the powers formerly vested in the state legislature with respect to the affairs, property and government of Dade County and all municipalities with its territorial jurisdiction. *State v. Dade County,* 142 So. 2d 79 (Fla. 1962).

BOARD was created on July 5, 1960 by Dade County Code, Sec. 32-11 and was vested with power to regulate and control public utilities under the direct jurisdiction and legislative control of the Board of County Commissioners. BOARD was granted authority, after due notice and public hearing, to change or fix rates of public utilities if

found that utilities' rates are unjust, unreasonable, unjustly discriminatory or unduly preferential. Dade County Code Sec. 32-65 (b).

One of the issues raised in this appeal is whether Dade County Code Sec. 32-5, prohibits BOARD from reducing utilities' rates. Sec. 32-5 provides in pertinent part that "nothing contained in this chapter shall be construed as authorizing the impairment or breach of any bonafide contractual arrangement entered into in good faith by a public utility prior to the effective date of this chapter . . . The Water and Sewer Board in the exercise of its regulatory powers in respect to the rates and charges of public utilities as herein defined shall take into consideration and give full force and effect to such instruments created and existing prior to the effective date of this chapter."

In *State v. Dade County,* 142 So. 2d 79 (Fla. 1962), it was held that the acquisition by Dade County Municipal Transportation (bus) Systems did not impair any vested rights of municipalities which had granted franchises to the transportation systems acquired by Dade County. The Court held that neither the municipality nor any tax payer thereof "has any vested right in a franchise granted by the city." Subsequent to this decision and in apparent reliance thereon, the County Attorney rendered opinion 63-7 which provides as follows: "Section 32-5 prohibits the impairment or breach of bonafide contractual arrangements entered into before the effective date of the County Ordinance. This provision does *not* preclude the Water & Sewer Board's review and adjustment of rates established pursuant to franchises entered into *prior* to the effective date of the ordinance."

It would thus appear that UTILITY has no contractual right to set any unreasonable rate even if such rate fell within the franchise rate schedule. This Court thus holds UTILITY has no vested rights to any rates established pursuant to the franchise rate schedule, especially if such rates are unreasonable.

As heretofore mentioned, while Ordinance Numbers 776 and 1042 purport to establish maximum initial sewer rates, it is clear that the ordinances require that any rates charged by UTILITY be reasonable. Thus the implication is that an appropriate rate setting body can adjust those rates to make them reasonable even if the fall within the statutory maximum.

UTILITY contends that by reducing its rates, BOARD unconstitutionally impaired UTILITY'S contractual rights. Section 32-2 of the Dade County Code authorizes BOARD to adjust UTILITY'S rates incident

to the exercise of its police power to protect the public health, safety and welfare. The action of BOARD in reducing UTILITY'S rates does not constitute an unlawful impairment of contract. Private contract rights must yield to the public welfare where the latter is appropriately declared and defined and the two conflict. *Union Drygoods Company v. Georgia Public Service Corp.,* 248 US 372 (1919). BOARD here possessed constitutional and police powers to establish reasonable water and sewer rates despite a prior contract which may have fixed the rates being charged by UTILITY. See *Union Drygoods Company v. Georgia Public Serice Corp.,* Supra; *H. Miller & Sons Inc. v. Hawkins,* 373 So 2d 913 (FLA 1979); *Miami Bridge Company v. Railroad Commission,* 20 So 2d 356 (FLA 1945). Having found BOARD to have jurisdiction, the next issue presented in this appeal is UTILITY'S claim that lowering of their rates was arbitrary, confiscatory, and not supported by substantial competent evidence. We disagree.

The record before this Court clearly reflects that the BOARD considered all actual, legitimate costs and expenses incurred by UTILITY in calculating UTILITY'S rate base and rate of return. The record further supports that the rate of return here set by the BOARD did not deny UTILITY a fair rate of return on its investment and was not confiscatory.

Dade County Code Section 32-65 (B) provides that BOARD may set reasonable rates for a utility if after public hearing BOARD finds that rates charged by UTILITY are ''unjust, unreasonable, unjustly discriminatory or unduly preferential''. The rates of UTILITY were here reduced pursuant to public hearings. At the various hearings, there was substantial, ccompetent evidence presented which supports the ruling of the BOARD. We conclude that the remainder of the contentions raised in UTILITY'S brief are devoid of merit. Therefore, it is.

ORDERED AND ADJUDGED that the order appealed from be affirmed.[1]

---

[1] We find that the disposition of Appellate Case No. 81-116-AP disposes of the appeal filed in Appellate Case No. 81-214-AP.