440 So.2d 371 (1983)
The CITIZENS OF the STATE OF FLORIDA, Appellants,
v.
FLORIDA PUBLIC SERVICE COMMISSION, Appellee, and
Jacksonville Suburban Utilities Corporation and Southern Utilities Company, Appellees/Cross-Appellants.
No. AE-103.
District Court of Appeal of Florida, First District.
January 14, 1983.
Rehearing Denied November 23, 1983.
Jack Shreve, Public Counsel, and J. Roger Howe, Associate Public Counsel, Tallahassee, for appellants.
Arthur C. Canaday, Gen. Counsel, and Susan F. Clark, Associate Gen. Counsel, Tallahassee, for appellee Florida Public Service Com'n.
James L. Ade, William A. Van Nortwick, Jr. and Michael A. Candeto of Martin, Ade Birchfield & Johnson, Jacksonville, for appellees/cross-appellants.
BOOTH, Judge.
This cause is before us on appeal by Citizens of the State of Florida (Citizens) and on cross-appeal by Jacksonville Suburban Utilities Corporation and Southern Utilities Company (Utilities) from a Florida Public Service Commission (PSC) order authorizing certain increases in the rates charged by Utilities. See Article V, Section 3(b)(2), Florida Constitution (1980). On appeal, *372 Citizens contend that PSC erred in permitting Utilities to include in their rate base an "add-back" of accumulated depreciation on contributions-in-aid-of-construction (CIAC), citing Citizens of the State of Florida v. Hawkins (Holiday Lakes), 364 So.2d 723 (Fla. 1978). This contention has no merit. A similar argument was rejected in Citizens of the State of Florida v. Florida Public Service Commission, 399 So.2d 9, 11 (Fla. 1st DCA 1981) (General Waterworks), wherein this court distinguished the Holiday Lakes case and held:
[D]epreciation is not merely a measure of the recovery of investment; rather, it also reflects deterioration of equipment, which, inevitably, will have to be replaced. Here, by utilizing the PSC's formula for rate base the utility can make provisions today for the replacement of property as it is retired from service. The formula allows the utility to receive a fair return on its investment and in no way penalizes the rate payers who are paying for the cost of using up the equipment which provides them service.
Accord, Westwood Lake, Inc. v. Dade County, 264 So.2d 7 (Fla. 1972).
On cross-appeal, Utilities urge that PSC erred in finding that Utilities' requested inflation-attrition allowance should be denied. The holding of PSC on this point was not that there was no inflation-attrition, but that these Utilities failed to present competent substantial evidence to support the allowance.
Florida Statutes, Section 367.081(2), mandates that utilities receive a fair return on investments in property used and useful in the public service. Westwood Lake, Inc. v. Dade County, 264 So.2d 7, 9 (Fla. 1972). The burden of proving the necessity for an inflation-attrition allowance is, of course, on Utilities, see, Florida Department of Health and Rehabilitative Services v. Career Service Commission, 289 So.2d 412 (Fla. 4th DCA 1974). PSC, however, may not blindly ignore projected inflation factors and allow "zero" for attrition simply because it is dissatisfied with the figures proposed by Utilities.
In the instant case, Utilities presented an admittedly qualified expert witness, John Gaustella, who testified that, without some allowance for attrition or erosion of earnings caused by inflation, Utilities would not earn their permissible rate of return during the period the rates were to be in effect. A second witness, Leo Mullen, testified and presented exhibits in which adjustments for inflation attrition were calculated in each individual maintenance and expense account. Where increases after the test year were unknown, individual expenses were adjusted by a "conservative" inflation factor of seven percent. No evidence was introduced that the methodology proposed by Utilities was in error or resulted in excessive rates.[1]
Utilities met their burden of proving the necessity for an inflation-attrition allowance by establishing (1) the existence of inflation, a fact which is not contradicted, and (2) a reasonable inflation factor of seven percent. At that point, the burden was on the Commission to provide an appropriate figure for the inflation factor.[2] This burden was not met by the Commission. Absent evidence supporting a total denial of the allowance, we find that the Commission's *373 rejection of the testimony of Utilities' experts, based primarily on the methodology used, was an abuse of discretion.
Accordingly, the order below is affirmed in part, reversed in part, and remanded for determination of an appropriate attrition allowance for the period in question and the taking of such additional testimony as is required for that determination.
THOMPSON, J., concurs.
ERVIN, J., concurs in part and dissents in part with written opinion.
ERVIN, Judge, concurring in part, dissenting in part.
I concur with the majority's affirmance of the points raised on appeal by Citizens, but I respectfully dissent from that part of the opinion reversing the PSC's denial of Utilities' requested attrition allowance.
In reviewing orders of the PSC our task is to determine whether there is competent, substantial evidence to support the Commission's action. "Orders of the Commission come before this Court clothed with the presumption of validity. On review this presumption of validity can only be overcome where the Commission's error either appears plainly on the face of the order or is shown by clear and satisfactory evidence." Citizens of the State of Florida v. Public Service Commission, 425 So.2d 534, 538 (Fla. 1982). In the case before us, the PSC reviewed the data and evidence presented by Utilities and its witnesses and concluded that Utilities had failed to present competent, substantial evidence to support the requested allowance. The PSC's order elaborates, at length, the Commission's reasoning behind its decision. Among other things it found that Utilities' expert witness, Mr. Gaustella, although an acknowledged expert in the field of utility rates, particularly in New York, was admittedly unfamiliar with the Florida Public Service Commission's procedures and methods in general and with the utilities in whose favor he was testifying in particular. Additionally, it found that Utilities had failed to provide any historical data to demonstrate past attrition and that Utilities' projections of future attrition were based, in part, on arbitrary estimates of future costs and inflation. Finally, it found that the interim rate increases approved by the Commission when Utilities' applications were first filed had not been considered in arriving at the projected attrition allowance.
A review of the PSC's order, in my opinion, reveals that Utilities has failed to demonstrate any asserted error by clear and satisfactory evidence. It is not the task of this court to overturn orders of the PSC simply because we may have arrived at a different result had we made the initial decision. Citizens v. PSC, at 538; Shevin v. Yarborough, 274 So.2d 505, 509 (Fla. 1973).
I would therefore affirm the PSC's order in all respects.
NOTES
[1] The United States Department of Labor reported that the overall 1979 inflation rate was 13.3 percent, and that the 1980 rate was 12.4 percent. Wall St.J., Jan. 28, 1980, at p. 3, col. 1 & 2; Jan. 26, 1981, at p. 3, col. 1. Both commissions and courts can take judicial notice of the existence of inflation and its effect on a utility company. Missouri ex rel. Missouri Water Co. v. Public Serv. Commission, 308 S.W.2d 704, 719 (Mo. 1957); Hancock Rural Tel. Corp. v. Public Serv. Commission, 137 Ind. App. 14, 201 N.E.2d 573, 581 (1964), pet. for rehearing dismissed, 203 N.E.2d 204 (1965).
[2] The Commission has subsequently adopted the figure of 8.99 percent as an inflation adjustment, known as the "GNP Implicit Price Deflator," pursuant to the inflation indexing procedure mandated in Section 367.081(4)(a), Florida Statutes (1980 Supp.). See, In Re: 1981 Price Indexing for Water and Sewer Companies, FPSC Docket No. 800777-WS, Order No. 9918 (March 31, 1981).